502 A.2d 1264

Joseph Edward MARTIN

v.

JOHNS–MANVILLE CORPORATION, Pittsburgh Corning Corporation, Owens-Corning Fiberglas Corp., Eagle-Pitcher Industries, Inc., Forty-Eight Insulations, Inc., the Celotex Corporation, Keene Corporation, Unarco Industries, Inc., Combustion Engineering, Inc., and Raybestos Manhattan, Inc.

v.

INDUSTRIAL FURNACE SUPPLIES, INC.

v.

OWENS–ILLINOIS, INC.

Appeal of COMBUSTION ENGINEERING, INC.

Joseph Edward MARTIN, Appellant,

v.

JOHNS–MANVILLE CORPORATION,

Pittsburgh Corning Corporation, Owens-Corning Fiberglas Corp., Eagle-Pitcher Industries, Inc., Forty-Eight Insulation, Inc., Celotec Corporation, Keene Corporation, Unarco Industries, Inc., Combustion Engineering, Inc., Raybestos-Manhattan, Inc.,

v.

INDUSTRIAL FURNACE SUPPLIES, INC.,
Owens-Illinois, Inc.

Superior Court of Pennsylvania.

Argued April 25, 1983.

Filed Dec. 20, 1985.

Petition for Allowance of Appeal
Granted July 1, 1986.

48

Richard K. Willman, Pittsburgh, for appellant in No. 1322 and for appellee in No. 1323.

William R. Caroselli, Pittsburgh, for appellant in No. 1323 and for appellee in No. 1322.

Patrick R. Riley, Pittsburgh, for Owens, appellee.

Kathleen S. McAllister, Pittsburgh, for Celotec, appellee.

Before CERCONE, President Judge, and SPAETH, HESTER, CAVANAUGH, WICKERSHAM, WIEAND and HOFFMAN, JJ.

SPAETH, Judge:

This is an asbestosis case. It is before us on remand from the Supreme Court of Pennsylvania. We had reversed the trial court's order denying appellant's post-trial motions and had ordered a new trial on damages. *Martin v. Johns-Manville Corp.*, 322 Pa.Super. 348, 469 A.2d 655 (1983). The Supreme Court reversed and remanded with instructions that we consider an issue that we had found it unnecessary to decide: Whether the trial court erred in instructing the jury that it could reduce any award of damages for appellant's disability by the percentage of his disability due to cigarette smoking. *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985).[1] On this issue we affirm.

In 1978 appellant, who had been an asbestos worker for thirty-nine years, became unable to work. His family physician, Arthur R. Koenig, M.D., had previously diagnosed appellant as having emphysema. The causes, he thought, were appellant's exposure to asbestos products and his cigarette smoking. N.T. Vol. III at 184–86. Appellant became a smoker in about 1941. N.T. Vol. I at 349. His smoking increased over the years and in the 1960's and 1970's he was smoking two packs of cigarettes per day. Id. at 350.

On April 16, 1978, appellant filed a complaint alleging that the defendants who had manufactured the asbestos products that he had worked with over the years were strictly liable for his disability on the theory that they had failed to warn of the dangerous propensities of those products. The case was tried to a jury from November 9 to 24, 1981. Appellant states in his brief that "loss of past and future earning capacity taken to a work expectancy of sixty-five years of age was in excess of $177,000." Brief

1. Appellant died before this case was argued in the Superior Court.

for Appellant at 9. *See* N.T. Vol. III at 134–37.[2] The jury awarded appellant $67,000.

Appellant argues that there was no factual basis for the trial court to charge the jury that it could reduce the amount of any award of damages by the amount of appellant's disability due to his cigarette smoking. The trial court's charge in this regard was as follows:

> If after considering all of the evidence you find that Martin's condition was solely due to his smoking cigarettes, you would not award him any damages. If, however, you find that his condition was solely due to exposure to asbestos, then you would award him the full amount as you determine those damages to be. If, however, you find that his condition is due both to his cigarette smoking and to his exposure to asbestos, then you first determine what the total amount of damages are, and then the next thing you do is determine what percent of his condition is due to cigarette smoking, and then you will reduce the total amount by the percentage that you find is due to cigarette smoking.

N.T. Vol. V at 86–87.

In its opinion the trial court cites Section 433A of the Restatement (Second) of Torts in support of its charge. That section provides:

> (1) Damages for harm are to be apportioned among two or more causes where
>
>> (a) there are distinct harms, or
>>
>> (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
>
> (2) Damages for any other harm cannot be apportioned among two or more causes.

Restatement (Second) of Torts § 433A (1965).

■■■ It was for the trial court, as an initial matter, to determine whether the evidence permitted apportionment:

---

**2.** Appellant retired at the age of 58. During his last year of work he earned $19,650. If he had made the same amount in each of the six years until he reached age 65, his total wage loss would have been about $118,000.

It is the function of the court to determine
. . . .

(b) whether the harm to the plaintiff is capable of apportionment among two or more causes.

*Id.* § 434.

Upon determining that the evidence did permit apportionment, the trial court was bound to instruct the jury on apportionment, *see Heymann v. Electric Service Manufacturing Co.*, 412 Pa. 338, 194 A.2d 429 (1963); *Perigo v. Deegan*, 288 Pa.Super. 93, 431 A.2d 303 (1981). Of course, we will not reverse the trial court's refusal to award a new trial unless the court has abused its discretion. *See Becker v. Butler County Memorial Hospital*, 249 Pa.Super. 321, 378 A.2d 316 (1977); *Williams v. Pepsi-Cola Metropolitan Bottling Co.*, 240 Pa.Super. 578, 362 A.2d 314 (1976).

■■■ Appellant does not argue that the trial court erred in applying Section 433A. Neither does he argue that the damages that the jury awarded were inadequate. Instead, he argues that an instruction on apportionment of damages is only warranted if there is evidence as to the percentage of the plaintiff's disability attributable to cigarette smoking and the percentage attributable to asbestosis, and that here, such evidence was not produced. We are not persuaded by this argument. While appellant is correct that none of the physicians who testified at trial as to his condition was able to assign a percentage to each of the causes of his disability, we are aware of no case requiring such assignment. In our view, the evidence that was produced was sufficient to enable the jury to reach a reasonable approximation of the harm due to each cause.

Six physicians testified at length regarding appellant's condition. In addition to Dr. Koenig, Jerome F. Wiot, M.D., a radiologist, Murray Sachs, M.D., a pulmonary specialist, and David Laman, M.D., also a pulmonary specialist, testified on appellant's behalf. Morris Zachary Gardner, M.D., a radiologist and John G. Shively, M.D., a pulmonary specialist, testified on behalf of appellees. Their testimony on the

question of the causes of appellant's disability may be summarized as follows.

Dr. Sachs, Dr. Wiot and Dr. Laman agreed that appellant suffered from pulmonary disease having both obstructive and restrictive components. *See, e.g.,* N.T. Vol. II–A at 10; N.T. Vol. I–A at 764–65. Dr. Wiot explained that with an obstructive lung disease, the airway passages in the lungs are blocked. *Id.* at 724. Dr. Sachs explained that with a restrictive lung disease, the lungs do not fill to capacity. He illustrated restrictive lung disease by the example of an attempt to blow up a balloon in a milk bottle: "You can blow up the balloon so far and then the confines of the milk bottle will prevent the balloon from expanding any further. That is what we mean by restrictive lung disease, something that is preventing the lung from expanding to what it should be able to expand to." *Id.* at 768.

Testimony of appellant's witnesses established that asbestosis is primarily a restrictive lung disease, *id.* at 769–70 (Sachs); 726 (Wiot), and that emphysema and chronic bronchitis, primarily caused by cigarette smoking, *id.*, are obstructive lung diseases. Dr. Laman stated, however, that while cigarette smoking is a substantial factor in the development of obstructive lung disease, asbestosis has an obstructive component as well, for when asbestos fibers become deposited in small airways in the lungs the air passages become blocked. N.T. Vol. II–A at 16.

Dr. Wiot, whom appellant had retained to examine his chest x-rays, but who had not otherwise examined appellant, described his findings at trial with the use of the x-rays. He observed "emphysematous changes" and "bullous changes" in the upper portion of the lungs. N.T. Vol. I–A at 667. He explained that bullous changes represent a breakdown in pulmonary tissue and are indicative of emphysema. *Id.* at 693–94. *See also id.* at 776–77 (testimony of Dr. Sachs). Dr. Wiot also stated that the x-rays showed "long-standing obstructive lung disease." *Id.* Dr. Laman testified that it is not uncommon for cigarette smokers to develop bullae. N.T. Vol. II–A at 23. *See also* N.T. Vol.

I–A at 694 (Wiot). Dr. Wiot and Dr. Sachs agreed that appellant had emphysema. N.T. Vol. I–A at 694, 776–77.

In further reviewing appellant's x-rays at trial, Dr. Wiot observed pleural plaques from the mid-zones of the lungs down. *Id.* at 669–70. Dr. Laman and Dr. Sachs likewise found pleural plaques in the lower two-thirds of the lung field. N.T. Vol. II–A at 12; Vol. I–A at 749. Dr. Wiot, Dr. Sachs and Dr. Laman agreed that pleural plaques are caused by inhalation of asbestos fibers. *Id.* at 697–98, 769–70; Vol. II–A at 13–14. Dr. Wiot described the system used to classify pleural plaques by the density of the opacity and by the number of opacities present in the lungs. Although he described the opacities found in appellant's lungs as small and irregular, he noted that the size of the opacity bears little relationship to the extent of disability that a person has suffered. N.T. I–A at 667, 683–84.

Testifying for appellees, Dr. Shively stated that appellant's chest x-ray showed one pleural plaque consistent with asbestos and that pulmonary function studies that he had conducted of appellant revealed a restrictive lung problem. N.T. Vol. IV at 106–10. Dr. Gardner testified that in his review of appellant's x-ray he also found pleural plaques but that they were of "the most minimal positive category. I definitely did identify them but in very, very low quantity, very mild, very minimal." *Id.* at 14–16. He further stated that while the plaques were consistent with asbestosis, he would expect to find more of them before making a diagnosis of asbestosis. *Id.* 17–18. He thus concluded that the x-rays "are not absolutely diagnostic of asbestosis." *Id.* at 18. Both Dr. Shively and Dr. Gardner agreed that the x-rays showed chronic obstructive lung disease, caused, Dr. Shively stated, by smoking. *Id.* at 13, 107.

As to the causes of appellant's disability, his witnesses agreed that both asbestosis and cigarette smoking were significant factors. Dr. Sachs testified as follows:

Q. Now, Mr. Caroselli [counsel for appellant] asked you what role asbestosis played in that disability and I am

going to ask you, are you able to differentiate and tell us what role the emphysema played in his disability?

A. I can't separate these two diseases for you in terms of percentage. My opinion is that both play a significant role in this man's disability, but I have no way of equating them or breaking them down. I can't tell you that asbestos contributed 48% and emphysema 52%, I don't know how to do that. There is no way I know of to separate these two diseases which are so closely intertwined.

I believe that both of them exist to a significant degree and they are both significant factors in this man's disability. That is the best I can do with that.

Q. Would the impairment due to chronic bronchitis and due to emphysema be disabling?

First of all, can you answer that: Maybe you don't know.

A. I don't know how much emphysema he has because superimposed on the emphysema is a significant amount of pleural thickening and fibrosis in the lungs. So if we were to take those away, I don't know if the remaining lung would be normal or not. I have no way of knowing that.

Q. Just so I understand it correctly, what you are saying is you can't tell us the degree to which this man would be disabled solely from the chronic bronchitis and the emphysema?

A. I don't know how to give you a percentage.

Q. However, my understanding is that it is your opinion that the emphysema and bronchitis are significant factors in whatever disability he may have?

A. That is correct.

Q. And am I correct that his longstanding cigarette smoking is a significant factor in his disability?

A. It is a factor in the sense that it enhances the genesis of bronchitis and emphysema and many people think it enhances the genesis of asbestosis. That is it enhances

the fibrosis of asbestosis and certainly enhances the associated complication of asbestosis.

Q. Touching on that point while we are talking about chronic obstructive lung disease, am I correct that the cause of that disease syndrome would be Mr. Martin's cigarette-smoking history? Would that be a cause?

A. Yes, I believe that that is the most likely affiliated factor.

N.T. Vol. I–A at 787–89.

Dr. Laman testified:

Q. And do you have an opinion, Doctor, with reasonable medical certainty whether or not his abestosis is a substantial factor in his total and permanent disability?

A. Yes. His asbestosis is a substantial factor in his total and permanent disability.

Q. And finally, Doctor, are you able to ascribe or indicate to the jury what percentage of his disability is total and permanent disability as attributable to his asbestosis and what percentage is attributable to his cigarette smoking?

A. It is not possible for me to separate out the relative contribution of cigarette smoking and asbestos from the cause of his obstructive pulmonary disease and the cause of his total and permanent disability. Both factors are important in producing the effect and the pulmonary disability that he has.

N.T. Vol. II–A at 18–19.

It was Dr. Shively's view that while "there were radiographic findings consistent with asbestosis.... [t]here was no evidence ... that the asbestos exposure ... contributed at all to [appellant's] impairment." N.T. Vol. IV at 115. He gave the opinion that appellant's disability was caused by chronic obstructive lung disease with pulmonary emphysema and chronic bronchitis, which in turn were caused by cigarette smoking. *Id.* at 114.

In considering "whether the harm to the plaintiff is capable of apportionment among two or more causes,"

Restatement (Second) of Torts § 434(1)(b), *supra*, we note that harm may be apportioned either when the plaintiff has suffered distinct *harms*, or when there are separate *causes* of a single harm. *Id.* § 433A, *supra*. While it is apparent from the testimony at trial that appellant suffered separate harms—chronic bronchitis, emphysema and asbestosis—the "harm" for which he sued and as to which the jury found him entitled to recover was his disability. Thus it was for the trial court to decide, under Section 434 of the Restatement (Second) of Torts, *supra*, whether the causes of appellant's disability, as testified to at trial, were fairly capable of apportionment.

 Comment a to Section 433A of the Restatement explains in general when invocation of that section is appropriate:

> The rules stated in this Section apply whenever two or more causes have combined to bring about harm to the plaintiff, ... They apply where each of the causes in question consists of the tortious conduct of a person.... The rules stated apply also where one or more of the contributing causes is an innocent one, as where the negligence of a defendant combines with the innocent conduct of another or with the operation of a force of nature, or with a pre-existing condition which the defendant has not caused to bring about the harm to the plaintiff. The rules stated apply also where one of the causes in question is the conduct of the plaintiff himself, whether it be negligent or not.

> Restatement (Second) of Torts § 433A comment a.

Thus, Section 433A is directed at the "causes" of harm, not at the manner in which the harm is brought about. That is, the section may be applied when the defendant's conduct was negligent or when the defendant was strictly liable for his conduct. Moreover, and of particular importance in this case, damages may be apportioned if the plaintiff's conduct, even though innocent, has contributed to the harm. Thus, the question whether appellant was negligent in smoking cigarettes is irrelevant to deciding whether his damages

may be reduced because of the part that smoking played in his disability.[3]

■ Further comment to Section 433A explains that certain kinds of harm "are normally incapable of any logical, reasonable, or practical division." Examples of such indivisible harms are death, a broken limb, or "any single wound." Thus, "[b]y far the greater number of personal injuries ... are ... normally single and indivisible." Comment i.[4] The comments and examples make clear that damages may be apportioned if any reasonable basis exists for doing so:

> A negligently scratches B's arm with a nail. The wound becomes infected, and B negligently fails to consult a physician until the infection has seriously damaged the arm. A is not liable for the aggravation of harm caused by B's negligence.

> Restatement (Second) of Torts § 433A, illus. 10.

*See also* Prosser & Keeton, Torts 345 (5th ed. 1984) ("Where a factual basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which that defendant's conduct has been a cause in fact, it is likely that the apportionment will be made.").

Here, the principal question is not as appellant argues, whether the respective percentage contributions of asbestosis and bronchitis and emphysema were proved, but whether there was a reasonable basis for the jury to apportion

**3.** One commentator has suggested that when evidence is produced that cigarette smoking has contributed to an asbestos worker's lung disease, the court might reduce damages in proportion to the extent that smoking caused the disease and in doing so should consider a number of factors, including the number of years the plaintiff smoked, the extent, duration and intensity of his exposure to asbestos, the nature and severity of the disease, the costs of required health care and the amount of damages awarded. Special Project, An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation, 36 Vanderbilt L.Rev. 573, 632 (1983).

**4.** It may be noted that in two opinions, *Smialek v. Chrysler Motors Corp.*, 290 Pa.Super. 496, 434 A.2d 1253 (1981), and *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 390 A.2d 765 (1978), we have applied Section 433A when the victim died.

appellant's disability among those causes. We note that we are not aware of any other case in which section 433A has been used to apportion damages in an asbestosis case. Evidence of cigarette smoking has, however, been held admissible to show the possible causes of lung cancer in an asbestos worker. *See, e.g., Gideon v. Johns-Manville Products Corp.*, 761 F.2d 1129 (5th Cir.1985).

In support of the argument that no reasonable basis for apportioning damages exists, appellant relies upon *Wade v. S.J. Groves & Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981), a case in which we held apportionment to be improper, and which appellant argues is analogous to this case. We are unable to agree. In *Wade,* the Groves Company contracted to dump waste and fill on the Williams property, as a result of which, water drainage problems were created on the Wade property, and when it rained, water and other debris flowed onto their land. In an action by Mr. and Mrs. Wade against the Groves Company and Mrs. Williams, the trial court apportioned the damages between the Company and Mrs. Williams. Reversing, we said:

> In the case at bar there were neither distinct harms nor a reasonable basis for determining the contribution of each cause to a single harm. The single resulting harm of silt and debris being deposited upon the Wades' land was caused jointly by appellee Williams and appellant Groves Company. The negligence of both combined to cause a single injury. No specific part nor any hypothetically separate portion of the injury was singularly caused by one or the other.

283 Pa.Super. at 473–74, 424 A.2d at 906–07.

Here, in contrast, appellant's witnesses's testified that the smokers' diseases of emphysema and chronic bronchitis as well as asbestosis were significant "specific parts" of appellant's disability. Moreover, the jury saw the x-rays and heard Dr. Wiot's explanation of the "specific parts"—bullae, indicative of emphysema, in the upper portion of the lungs, and pleural plaques, indicative of asbestosis, in the lower portions. The jury knew, from appellant's testimony,

the length of time he had been an asbestos worker and a smoker. That the testimony did not establish the exact proportion that each disease contributed to appellant's disability suggests, not that the damages should not have been apportioned, but only that medical science has not yet been able to calculate the proportions as exact percentages. This inability does not diminish the fact that the causes of the harm were, unlike the indivisible harm in *Wade*, distinct and capable of rough approximation.

Affirmed.