517 A.2d 968

Callie G. BRYANT

v.

GIRARD BANK and Provident National Bank and State
Farm Fire & Casualty Co., Inc. and Young
Adjustment Company.

Appeal of YOUNG ADJUSTMENT CO.

Callie BRYANT, Appellant,

v.

GIRARD BANK and Provident National Bank and State
Farm Fire & Casualty Co., Inc. and Young
Adjustment Company.

Superior Court of Pennsylvania.

Argued June 17, 1986.

Filed Nov. 3, 1986.

336

338

Robert H. Malis and Stephen A. Cozen, Philadelphia, for appellants in No. 3228 and appellees in No. 82.

Meyer A. Bushman, Philadelphia, for appellant in No. 82 and appellee in No. 3228.

Before CIRILLO, President Judge, and CAVANAUGH and TAMILIA, JJ.

CIRILLO, President Judge:

This case involves cross appeals from an order denying the post-trial motions of Young Adjustment Company (Young), granting in part the post-trial motions of Callie Bryant and assessing damages in favor of Callie Bryant. On appeal, Young contends that the trial court erred in refusing to grant its motions for judgment n.o.v. and a new trial. In the alternative, Young contends that the trial court incorrectly calculated damages. Callie Bryant contends that the trial court erred in calculating the amount of interest due on the award. Each appeal will be considered separately.

## FACTS AND PROCEDURAL HISTORY

The standard of review in cases involving the denial of a motion for judgment n.o.v. is well established. As stated by this Court in *Walsh v. Gas and Water Co.*, 303 Pa.Super 52, 449 A.2d 573 (1982):

In reviewing the denial of a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom must be viewed in a light most favorable to the verdict winner; all conflicts in the evidence are resolved in favor of the prevailing party. *See Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979); *Mike v. Borough of Aliquippa*, 279 Pa.Super. 382, 421 A.2d 251 (1980). Evidence supporting the verdict is considered and the rest rejected. *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968). As we said recently, "A judgment notwithstanding the verdict should be entered only in a clear case, when the facts are such that no two

reasonable persons could fail to agree that the verdict was improper...." *Martin v. Soblotney*, 296 Pa.Super. 145, 442 A.2d 700 (1982).

303 Pa.Super. at 58, 449 A.2d at 576. With this standard in mind, the complex facts of the instant case may be summarized as follows.

Bradley and Callie Bryant were married and owned a home in Devon, Pennsylvania, as tenants by the entireties. The home and its contents were insured pursuant to a contract of insurance issued to the Bryants jointly by State Farm Fire and Casualty Company, Inc. (State Farm). The Bryants became separated late in the summer of 1977. On July 8, 1978, the marital home and its contents were destroyed by fire while both Bryants were in Florida. On the following day the Bryants entered into a contract with Young, a public adjustor. Young agreed to represent the Bryants in the presentation and adjustment of their insurance claim in exchange for a fee of ten percent of the Bryant's total monetary recovery.

During the fall of 1978, State Farm issued three drafts in satisfaction of the Bryants' claims. The drafts represented the insurance proceeds from the loss of their home, for loss of their personal property, and for emergency living expenses, respectively. Each draft was made payable to the Bryants jointly. Young was also listed as a joint payee on each of the drafts in light of its fee which was payable upon successful adjustment and payment of the Bryants' claim. Girard Bank was also listed as a joint payee on one of the drafts due to its mortgage interest in the home. Each of the drafts was embossed on its reverse side with the words "ALL PAYEES MUST ENDORSE THIS DRAFT."

The record reveals that on the morning of September 15, 1978, Mr. Lamb, Callie Bryant's attorney, telephoned Mr. Horowitz, Young's Vice President. While in Callie Bryant's presence, Lamb informed Horowitz that he represented Callie Bryant in a domestic relations dispute and that Callie Bryant was concerned. At trial, Lamb testified that he also instructed Horowitz that "when the release came in and the

checks [drafts from State Farm] came in, that one or both of us wanted to be there to have Mrs. Bryant sign the releases, and when the checks came in to get the checks...." Callie Bryant testified that Lamb instructed Horowitz that "[u]nder no circumstances are you to release those releases or the drafts unless Mrs. Bryant or myself are present."

Lamb also instructed Horowitz that Young represented both Mr. and Mrs. Bryant. According to Lamb, Horowitz stated that he understood Mr. Lamb and that there would be "no problem."

At approximately 4:00 p.m. on September 15, 1978, Mr. Leach, a representative and employee of Bradley Bryant, appeared in Horowitz' office bearing two of the State Farm drafts. The drafts were handed to Mr. Horowitz. Mr. Horowitz endorsed the drafts and handed them back to Leach. In return, Leach handed Horowitz an envelope containing two checks, totalling approximately $47,000, which represented Young's fee. Leach then left Horowitz' office and delivered the State Farm drafts to Bradley Bryant. This process was repeated on October 17, 1978 with respect to the third draft.

Mr. Horowitz did not notify Mr. Lamb or Callie Bryant of any of his transactions with Leach. Neither Lamb nor Callie Bryant were present to receive the drafts.

Subsequently, and without his wife's knowledge, Bradley Bryant printed his name and his wife's name on the back of each draft. The checks were then negotiated through joint accounts maintained by the Bryants at various banks, including Girard, which satisfied the Bryant's mortgage obligation out of the proceeds. The drafts were honored by the banks.

In November of 1978, Lamb and Callie Bryant learned through contacting Horowitz that the drafts had come through and that Horowitz considered the case closed. Horowitz also informed Lamb that, as far as Young and Horowitz were concerned, Young represented Bradley Bryant only.

Bradley Bryant disappeared and disposed of all of the insurance proceeds to the exclusion of his wife and children. He was subsequently incarcerated on unrelated charges.

In 1979, Callie Bryant instituted the present action in Philadelphia County on her own behalf and on behalf of Bradley Bryant as an unwilling plaintiff against Young, State Farm, Girard, and Provident National Bank. Alternatively, the action was brought "on her own behalf by virtue of the fact that her claim for equitable distribution under the 1980 Divorce Code ... involves and includes the property which is the subject matter of this litigation." In sum, it was alleged that Young breached its fiduciary duty and breached its agency contract when it endorsed and forwarded the drafts to Bradley Bryant despite having advance warning and actual knowledge that Bradley might act adversely to his wife's interest. It was also alleged that Girard and Provident negligently honored the drafts without Callie Bryant's endorsement. Provident joined Savannah and Pioneer banks as additional defendants. Savannah joined Bradley Bryant for purposes of indemnification. Bradley Bryant did not appear at trial and apparently, with the exception of a divorce action subsequently instituted by Callie Bryant, no other action has been instituted against him by any of the parties in the instant matter.

On October 6, 1980, Callie Bryant filed a complaint for divorce in Montgomery County. A decree granting the divorce and retaining jurisdiction to resolve the issue of equitable distribution was entered on December 21, 1982. On September 6, 1983 the Montgomery County court awarded Callie Bryant "the entire proceeds or recovery against [Young] ... free and clear from any claim or interest of [Bradley Bryant] ... ," and also any and all real or personal property previously or currently titled in Callie Bryant's name. This order was amended on March 9, 1984, and awarded Callie Bryant all property ever possessed by her, titled in her name, or held as tenants by the entireties with her husband.

The instant action went to trial in May of 1985. Prior to trial, Callie Bryant entered into settlement agreements with Provident and the additional defendant banks. Each bank executed a joint tortfeasor release. On the final day of trial, but prior to verdict, Girard also settled and executed a release. The trial proceeded against Young alone. The jury returned a verdict on liability against Young alone with specific findings that Young was negligent with regard to its handling of the State Farm drafts and that such negligence was a substantial factor in bringing about the harm suffered by Callie Bryant.

The issue of damages was decided by the trial court. The trial judge determined that Callie Bryant was entitled to the full amount of the net insurance proceeds payable to the Bryants minus the following: (1) an amount paid in satisfaction of a mortgage on the property, (2) the amounts received in settlement with the banks plus interest earned thereon, and (3) the amount previously paid to Young in fees. Damages were assessed and awarded in the amount of $275,215.84. Young's post-trial motions for judgment n.o.v. and new trial were denied. Callie Bryant's exception to the trial court's order insofar as it deducted interest purportedly accruing on the settlement monies paid previously by the settling banks was denied. These appeals followed.

## YOUNG'S APPEAL

### A. JUDGMENT NOTWITHSTANDING THE VERDICT

Young raises three issues with regard to the trial court's denial of its motion for judgment n.o.v.: (1) whether the evidence was legally sufficient to establish a duty on the part of Young and a breach thereof; (2) whether, as a matter of law, Young's conduct could constitute a substantial factor in bringing about Callie Bryant's loss; and (3) whether the record demonstrates the existence of intervening, superseding causes which, as a matter of law, preclude Young's liability for the loss of the drafts.

In support of its first judgment n.o.v. issue, Young asserts that the record does not support an inference that it breached a duty owed to Callie Bryant pursuant to the adjusting contract; that it owed or assumed any duties outside the adjusting contract, or that it breached a duty owed to Bradley or Callie Bryant as members of the entireties estate. We hold that Young's first and second judgment n.o.v. issues are not preserved for our review.

It is well settled that issues not raised in the trial or hearing court are not properly preserved for appellate review and will not be considered. *Kovach v. General Telephone Co. of Pennsylvania*, 340 Pa.Super. 144, 489 A.2d 883 (1985); *Cherry v. Willer*, 317 Pa.Super. 58, 463 A.2d 1082 (1983); *Durkin v. Equine Clinics, Inc.*, 313 Pa.Super. 75, 459 A.2d 417 (1983); *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 423 A.2d 1251 (1980); Pa.R.A.P. 302(A); Pa.R.C.P. 227.1(b). Moreover, failure to set forth an argument in briefs filed in the trial court in support of post-trial motions constitutes a failure to preserve the issue or issues not argued. *Bell v. City of Philadelphia*, 341 Pa.Super. 534, 491 A.2d 1386 (1985), *citing Tagnani v. Lew*, 493 Pa. 371, 426 A.2d 595 (1981); *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). *See also Equipment Finance v. Toth*, 328 Pa.Super. 351, 476 A.2d 1366 (1984); *Schneider v. Albert Einstein Medical Center*, 257 Pa.Super. 348, 390 A.2d 1271 (1978).

■ In the instant case, Young failed to raise or even suggest in its post-trial motions for judgment n.o.v. the duty and substantial factor issues and related sub-issues now raised on appeal. Further, Young's brief filed in support of its post-trial motions contains no argument whatsoever concerning the nature or existence of the duty owed to Callie Bryant or to the entireties estate. Under these circumstances, we conclude that Young's first two issues have not been preserved for our review.

Young's remaining judgment n.o.v. issue concerns the intervening conduct of Bradley Bryant and the banks. Young argues that the conduct of Bradley Bryant and the

banks were superseding causes of the harm suffered by Callie Bryant and that judgment n.o.v. should have been granted on this basis. We disagree.

As stated by our Supreme Court in *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977):

Although some force may have intervened between appellee's conduct and the resulting harm to the appellant, it cannot be said, as a matter of law, that any such intervening force superseded appellee's conduct. Not every intervening force is a superseding force. Section 435(1) of the Restatement of Torts, Second, states:

"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that neither foresaw nor should have forseen the extent of the harm *or the manner* in which it occurred does not prevent him from being liable." *See Churbuck v. Union Railroad Company,* 380 Pa. 181, 110 A.2d 210 (1955).

474 Pa. at 595–96, 379 A.2d at 115. (Emphasis added.)

In *Ford,* the Court applied the Restatement (Second) of Torts, Sections 435, 442B, and 438 to a situation where an unidentified intervening force started a fire in a negligently maintained building. The fire spread and damaged a neighboring building. The Court held that the owner of the building could not escape liability as a matter of law simply because the harm resulted *in a manner* which was unforeseeable. Further, the Court in *Ford* held that the owner of the building could not escape liability as a matter of law simply because the intervening act may have been done by a third person committing an intentional tort or crime. We find such reasoning applicable here.

Section 448 of the Restatement (Second) of Torts, provides as follows:

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized*

*or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.*

(Emphasis added).

■ The trial testimony of Callie Bryant and her attorney established that Horowitz was specifically informed of: (1) Callie Bryant's concern about the handling of the drafts and the distribution of the insurance proceeds; (2) the Bryants' domestic situation; and (3) Callie Bryant's understanding that Young acted as agent for both Bryants. More importantly, there is ample support in the record for the inference that Horowitz was specifically instructed that Callie Bryant or her attorney were to be present to receive the drafts prior to the processing and release of them by Horowitz. Under these circumstances, we conclude that Horowitz' conduct in disregarding Lamb's instructions created a situation in which third persons, particularly Bradley Bryant, might avail themselves of the opportunity to commit a tort or crime. Whether or not Young realized or should have realized that such a situation had been created was a question for the jury to decide. *Ford, supra.* In sum, the trial court properly concluded that Young could not escape liability as a matter of law based on the intervening acts of Bradley Bryant.

■ Young contends that an application of the factors listed in Section 442 of the Restatement (Second) of Torts establishes that, as a matter of law, the conduct of the banks constitutes a superseding cause which insulates Young from liability. We have considered these factors and find none of them dispositive of the issue at hand. We are guided by Comment b of Section 442B of the Restatement:

If the actor's conduct has created or increased the risk that a *particular harm to the plaintiff will occur,* and has been a substantial factor in causing that harm, it is immaterial to the actor's liability that the harm is brought about in a manner *which no one in his position could*

*possibly have been expected to foresee or anticipate.*
This is true not only where the result is produced by the
direct operation of the actor's conduct upon conditions or
circumstances existing at the time, but also where it is
brought about through the intervention of other forces
which the actor could not have expected, whether they be
forces of nature, or the actions of animals, or those of
third persons which are not intentionally tortious or crimi-
nal. This is to say that *any harm which is in itself
foreseeable, as to which the actor has created or in-
creased the recognizable risk, is always 'proximate,' no
matter how it is brought about,* except where there is
such intentionally tortious or criminal intervention, and it
is not within the scope of the risk created by the original
negligent conduct.

(Emphasis added.)

Young's conduct in the instant case could have increased
the risk that Bradley Bryant would harm his wife and
children by (1) obtaining the insurance proceeds and (2)
diverting them to his own use, or (3) preventing Callie and
the children from sharing in the proceeds. The possibility
of such harm caused Callie Bryant's concern. The possibili-
ty of such harm prompted the telephone call to Horowitz.
The possibility of such harm prompted Lamb's specific
instructions to Horowitz. Horowitz ignored the concern
and ignored the instructions. Such harm in fact occurred.
As stated by the Court in *Ford, supra:*

If one engages in negligent conduct toward another,
such as unreasonably increasing the risk that that person
will suffer a particular kind of harm, it cannot be said, as
a matter of law, that the actor is not liable simply
because the foreseeable plaintiff suffered the foreseeable
harm *in a manner* which was not foreseeable.

474 Pa. at 596, 379 A.2d at 111 (Emphasis added).

We conclude that the conduct of the banks did not, as a
matter of law, constitute a superseding cause of the harm
suffered in the instant case.

## B. NEW TRIAL

■ We next consider Young's contention that the trial court improperly denied its motion for a new trial. Initially, we reiterate the well established rule regarding the circumscribed scope of appellate review applicable to a trial court's order granting or denying a new trial. The grant or denial of a new trial will not be subject to reversal on appeal absent either an error of law which controlled the outcome of the case, *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 163, 494 A.2d 1088, 1093 (1985), *citing Anzelone v. Jesperson*, 436 Pa. 28, 258 A.2d 510 (1969); *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 229 A.2d 861 (1967), or a palpable abuse of discretion when the ruling turns on the weight of the evidence. *Martin v. Johns-Manville, supra, citing Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 367–68, 263 A.2d 432, 436 (1970).

Young first contends that the trial court erred in refusing to charge the jury as to the comparative negligence of the settling banks for purposes of apportioning damages. We disagree.

■ First, our review of both the original record and that portion of the record reproduced by Young on appeal fails to reveal the existence of a request by Young for an instruction regarding the apportionment of liability or damages. Error cannot be predicated upon the failure to give instructions which were never requested. *Campana v. Alpha Broadcasting Co., Inc.*, 239 Pa. 39, 361 A.2d 708 (1976).

■ Second, as noted by the Court in *Wade v. S.J. Groves and Sons Co.*, 283 Pa.Super. 464, 424 A.2d 902 (1981), "... the Restatement places the burden of proving an apportionment on the party who seeks it. Restatement (Second) of Torts, § 433(B)(2)." 283 Pa.Super. at 774, n. 7, 424 A.2d at 905, n. 7. Young has not met this burden. Indeed, it is clear that there existed no reasonable basis upon which the jury could apportion Callie Bryant's loss among the causes. As stated in *Wade, supra:* "There was no reasonable basis

for determining the contribution of each cause to a single harm and, therefore, the damages should not have been apportioned." 283 Pa.Super. at 474, 424 A.2d at 905 (footnote omitted). *See also Martin v. Johns Manville Corporation*, 349 Pa.Super. 46, 502 A.2d 1264 (1985) (damages may be apportioned when there are distinct harms or separate causes of a single harm *and* a reasonable basis exists for apportionment). In the instant case there was but one distinct and indivisible harm: the loss of the insurance proceeds as represented by the three State Farm drafts. This harm was caused by the combined negligence of Young and the banks. However, stated simply, our review of the record reveals no reasonable basis for isolating any of the causative factors and assigning them a percentage of liability for the total loss.

We next consider Young's contention that the trial court erred by refusing to charge the jury as to the comparative negligence of Callie Bryant. The trial court denied such an instruction, ruling that the evidence was insufficient to support an inference that Callie Bryant had been negligent. Our review of the record convinces us that the trial court's conclusion was entirely correct.

Young raises three instances of alleged negligence on the part of Callie Bryant. First, Young asserts that Callie Bryant did little or nothing to protect her interests after Lamb's telephone call to Horowitz. However, the evidence adduced at trial reveals that Callie Bryant's alleged inaction was clearly the result of her reliance upon representations by Horowitz, her agent, that he would comply with Lamb's specific instructions regarding the handling of the drafts. Contributory negligence on the part of the plaintiff is negated when the harm results from a concealed danger of which the plaintiff has neither actual or constructive notice. *Walters v. Char-Mar, Inc.*, 220 Pa.Super. 79, 284 A.2d 139 (1971). In the instant case, the record reveals that Callie Bryant had no notice of Horowitz' complete disregard of her instructions until well after the drafts had been lost. The trial judge correctly concluded that no inference of

negligence could be drawn from Callie Bryant's reliance upon Young's representations.

Young next argues that an inference of negligence may be drawn from Callie Bryant's failure to close joint bank accounts maintained by her and her husband. Young argues that Callie Bryant knew or should have known that her husband might use the joint accounts to somehow deprive her of the insurance proceeds. Therefore, according to Young, the trial court erred in refusing to instruct the jury as to Callie Bryant's negligence. This argument, although not without facial appeal, lacks merit.

The following quote from the Restatement (Second) of Torts is instructive:

> There is a difference to be noted between negligence and contributory negligence. Where the negligence of a defendant creates a risk of a particular harm, occurring in a particular manner, and the same harm is in fact brought about in another manner, through the operation of some intervening force which was not one of the hazards making up the original risk, the defendant normally is not relieved of responsibility by the intervention of the force, and is liable for the harm. (See § 442A and Comments.) *But where the negligence of the plaintiff creates a risk c particular harm to him, occurring in a particular manner, and the same harm is in fact brought about by the intervention of a force which was not one of the original hazards, the plaintiff is not barred from recovery.* This difference is to be attributed to the more restrictive attitude of the courts toward contributory negligence, as compared with negligence, and their tendency to confine it within somewhat narrower limits.

Restatement (Second) of Torts, 468, Comment c. (Emphasis added.)

While Section 468 deals with a plaintiff's conduct as it relates to the doctrine of contributory negligence, we find the above emphasized portion of the comment to that section applicable here. Assuming *arguendo* that Callie

Bryant's failure to close the joint accounts constitutes negligence, and that her negligence created the risk that Bradley might harm her by misusing the accounts in some way, the fact remains that the actual loss of the drafts was brought about by a force which was *not* one of the original hazards. Further, the force was clearly one that Callie Bryant had no duty to foresee. *See Fahringer v. Rinehimer,* 283 Pa.Super. 93, 423 A.2d 731 (1981). That "force" was Young's complete disregard of Lamb's specific instructions regarding the handling of the drafts. We agree with the trial court that the continued maintenance of the joint accounts could not support an inference of negligence on the part of Callie Bryant under the facts of this case.

Young next asserts that Callie Bryant was negligent in authorizing the preparation and mailing of the following letter from Lamb to Horowitz:

> As I indicated to you in my telephone conversation of September 15, 1978, I represent Mrs. Bradley F. (Callie) Bryant. She and her husband are experiencing some domestic difficulties at this point and I am very concerned that if and when a settlement of the fire loss in Devon takes place, that you be absolutely sure that Mrs. Bryant has signed the release and the check is made out to both her and her husband. It is not my intention to accuse anyone of anything; *I am merely concerned that you verify with me or with Mrs. Bryant that she has actually signed the release before the check is issued.*

(Emphasis added.)

Young argues that the letter, dated September 20, 1978, supports an inference that Callie Bryant, through her attorney, created an ambiguity regarding Lamb's instructions and thereby contributed to Young's belief that he acted in a reasonable manner and in accordance with Lamb's telephone instructions. We disagree. First, the letter clearly could have had no impact on Horowitz' handling of the first two drafts. These drafts were signed and relased by Horowitz within hours of the telephone conversation with Lamb and several days *prior* to his receipt of the allegedly

ambiguous letter. Second, any "ambiguity" is clearly obviated by the last sentence of Lamb's letter, in which Horowitz was instructed to "verify ... before the check is issued." Horowitz' deposition testimony, which was read into the record at trial, reveals that no such verification was made or even attempted with regard to any of the three drafts. Upon review, we conclude that the record does not support an inference that Callie Bryant negligently created any ambiguity with respect to the clear instructions given to Horowitz. Therefore, the trial court was correct in refusing a comparative negligence charge founded upon Callie Bryant's authorization of the letter in question.

■ Young would also assign error on the basis of the trial court's failure to instruct the jury as to the comparative negligence of Bradley Bryant as a member of the entireties estate. Our examination of the trial transcript reveals that this exact issue was the subject of a discussion between the trial judge and counsel for the parties prior to the court's charge to the jury. At that time, counsel for Young agreed that the issue of Bradley's comparative negligence would not be included in the court's charge to the jury. This agreement was freely given without reservation or qualification. Moreover, Young made no objection at the conclusion of the charge. Thus, Young can not be heard to complain on appeal that the trial court erred by failing to instruct the jury as to Bradley's negligence. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ The final new trial issue raised by Young concerns the trial court's failure to instruct the jury on the issue of superseding cause. Young contends that it was entitled to such an instruction based upon the acts and omissions of Bradley Bryant and the banks as established at trial. Having reviewed the trial court's general charge on causation as well as the charge in its entirety, we conclude that the trial court's careful instructions on substantial factor and concurring cause obviated the need for a separate instruction on superseding cause. *See Piekarkski v. Club Overlook Estates, Inc.*, 281 Pa.Super. 162, 421 A.2d 1198 (1980).

*See also* Pennsylvania Proposed Standard Jury Instructions, No. 3.28 and accompanying note.

## C. DAMAGES

The issue of Callie Bryant's interest in the insurance proceeds is complex. To summarize, Young contends that Callie Bryant is entitled to only one half of the insurance proceeds. Appellant claims that the applicable caselaw establishes that whenever a husband and wife are co-insured they each possess a one-half interest in the policy proceeds. In support of this proposition Young cites *Maravich v. Aetna Life and Casualty*, 350 Pa.Super. 392, 504 A.2d 896 (1986); *Opat v. State Farm Fire and Casualty Insurance Co.*, 542 F.Supp. 1321 (E.D.Pa.1982) and *McDivitt v. Pymatuning Mutual Fire Insurance Company*, 303 Pa.Super. 130, 449 A.2d 612 (1982).

■ We must reject this assertion. Young's claim is based on a total misinterpretation of the very cases it has cited. The *McDivitt, Maravich* and *Opat* courts each recognized that a party's right to recover under an insurance policy is determined by the terms of the policy and not the ownership of the underlying insured asset. Even if the marital home is owned by the entireties, if the husband and wife are joint co-owners of the policy insuring the home they are each entitled to fifty percent of any insurance proceeds. If the policy is owned by the entireties they each own an undivided interest in the total amount of the proceeds. *Maravich*, 350 Pa.Super. at 407, 504 A.2d at 904 (it is contract of insurance and nature of interests created by its terms which is determinative of rights of co-insured). Nor does the method of payment chosen by the insurance company affect the parties rights. No matter how the company drafts its payment, the right to that payment is controlled by the ownership of the policy.

■ Ownership of the policy is a factual question which is determined by the totality of the circumstances. *McDivitt v. Pymatuning Mut. Fire Ins. Co.*, 302 Pa.Super. 130, 136, 449 A.2d 612, 615 (1982). The court must examine

whose name the policy is in, who paid the premiums and from what funds, and whether the policy was held for the common benefit of husband and wife. *Id.*, 302 Pa.Superior Ct. at 135–137, 449 A.2d at 615–16. However, property jointly held by a husband and wife is presumptively owned by the entireties. *In re Estate of Holmes*, 414 Pa. 403, 406, 200 A.2d 745, 747 (1964).

The cases cited by Young have carved out a limited exception to these rules. However, that exception is no help to Young. The cases hold that even if a homeowner's policy is owned by the entireties, an innocent spouse is entitled to fifty percent of the policy's value when the other spouse destroys the home by arson. *Maravich*, 350 Pa.Super. at 401–07, 504 A.2d at 901–04. This equitable exception protects the innocent spouse, who otherwise would receive nothing. It is inapplicable to this case since arson is not involved. Also, each of the cited cases concerned a dispute over the insurance company's obligation to pay the proceeds. No such dispute is present here as State Farm has already paid the Bryant's claims. Young questions only the ownership of the payments. Furthermore, Young is attempting to turn the exception around and use it to victimize an innocent party. This we refuse to do.

In the instant case, the policy was held in the names of both husband and wife and thus, was presumptively entireties property. *See Holmes*, 414 Pa. at 406, 200 A.2d at 747. Young has failed to rebut this presumption. It has offered no evidence in support of his theory that appellee and her husband each owned separate one-half shares in the policy. As noted above, Young's argument rests on a total misinterpretation of the law.

 In the decree of divorce, appellee was awarded all the property owned by the entireties. Therefore, she was entitled to one hundred percent of the insurance proceeds unless the entireties estate in those proceeds was terminated prior to the decree.

■ An entireties estate may be terminated by an offer and acceptance of partition. *Gray v. Gray,* 275 Pa.Super. 131, 133–134, 418 A.2d 646, 648 (1980). If one owner misappropriates the funds for his own benefit, it is considered an offer of partition. *Id.,* 275 Pa.Superior Ct. at 133–34, 418 A.2d at 648. If the other party then files suit for partition, it is deemed an acceptance of the offer and the entireties estate is terminated. *Id.*

Mr. Bryant misappropriated the insurance proceeds but appellee never accepted this offer of partition. She responded by filing suit for divorce. Therefore, the entireties estate was not destroyed and was still in existence at the time of the decree.

■ Young claims that awarding appellee one hundred percent of the insurance proceeds constitutes overcompensation. It argues that State Farm has already paid the full value of the policy to the entireties estate. However, appellee will certainly not be overcompensated. She was entitled to one hundred percent of the insurance proceeds but she received nothing because of Young's negligence. She is entitled to the difference between what she should have gotten and what she did get. As the learned trial court stated:

"... had Young Adjustment Company not acted negligently in endorsing the drafts and turning them over to Bradley Bryant without Callie Bryant being notified and present contrary to the express instructions of her attorney, the proceeds of those drafts would have been marital property and subject to equitable distribution pursuant to the Divorce Code of Pennsylvania. Furthermore, since the drafts were titled in the names of both Callie and Bradley Bryant, the proceeds were properly entireties property, and the subsequent decree of the Court awarded all such property to Callie Bryant."

If Young thinks it has been unfairly penalized because of Bradley Bryant's wrongful acts, it should take recourse against Mr. Bryant.

For the foregoing reasons, the trial court's decision as to damages is affirmed.

## CALLIE BRYANT'S APPEAL

Callie Bryant challenges the trial court's deduction of statutory interest purportedly accruing on the settlement funds paid by the settling banks from the total amount assessed against Young. We affirm the trial court.

The trial court's calculation of damages was as follows:

| | | |
|---|---|---|
| | $496,566.17 ..... | (full amount of drafts) |
| Less: | 106,886.41 ..... | (amount of Girard's Mortgage) |
| | $389,679.76 | |
| Less: | 49,656.62 ..... | (amount of Young's fee) |
| | $340,023.14 | |
| Less: | 127,778.00 ..... | (amount of settlements) |
| | $212,245.14 | |
| Plus: | 89,142.97 ..... | (interest from 1/1/ 78–11/1/85 |
| | $301,388.11 | at 6% on above amount) |
| Less: | 26,172.27 ..... | (credit for interest at 6% |
| | $275,215.84 | on settlement from respective dates of settlement [with defendant banks] until 11/1/ 85) |

Callie Bryant would assign error on the basis of the final deduction of $26,172.27, arguing that the deduction is illogical and unjust in that it penalizes her for having settled with the banks. We disagree.

 "Interest is the compensation allowed by law ... for the deprivation of money. *When there is no such deprivation, no interest can be awarded.*" *Schleeter v. Intrieri,* 326 Pa.Super. 233, 235, 473 A.2d 1067, 1068–69 (1984) (Emphasis added). In the instant case, Callie Bryant was not "deprived" of the amounts received in settlement with the banks in that she received these monies several months prior to entry of judgment in her favor. The trial court

correctly adjusted the total award to reflect the fact that she had the use of these monies during that period of time. We find no abuse of discretion.

AFFIRMED.