J-A08025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARISA GUARDO, EXECUTRIX OF THE ESTATE OF ANNA MISCELLA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUSAN L. BUZZURO | : | |
| | : | No. 1905 EDA 2017 |
| Appellant | : | |

Appeal from the Orders of March 23, 2017 and May 11, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court Division at No(s): No. 193 O.C. 2013

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                              **FILED JUNE 27, 2018**

Susan L. Buzzuro appeals from the orders, entered in the Court of Common Pleas of Monroe County, Orphans' Court Division, denying her petition for declaratory judgment and imposing a surcharge upon her. Upon careful review, we affirm.

The Orphans' Court set forth the facts of this matter as follows:

Sometime in June 2010, the extended family of [Anna Miscella ("Decedent")] and Decedent came to an arrangement wherein a home would be purchased for [Buzzuro] and Decedent to live in while [Buzzuro] acted as Decedent's full time caregiver. [Buzzuro] was one of the Decedent's nieces. In compensation for [Buzzuro's] services, the home was titled in both names as joint tenants with a right of survivorship. [Buzzuro] lived with and provided care for the Decedent in Monroe County, Pennsylvania from September 2010 through March 2014, the time periods relevant to these proceedings. Testimony established that the parties had agreed to split the living and home expenses equally with the exception of food costs. The Decedent was only liable for one-third of the food expenses due to [Buzzuro's] son also

_____

*   Retired Senior Judge assigned to the Superior Court.

residing in the home. On February 16, 2012, Decedent signed a document naming [Buzzuro] her [as agent under a] [p]ower of [a]ttorney. By [Buzzuro's] own testimony[,] she had begun signing Decedent's checks and acting as a fiduciary for the Decedent before this date and sought the [p]ower of [a]ttorney to "make things legal."

The parties originally came before the Orphan[s'] Court on a Petition for the Appointment of a Guardian for the Decedent. On October 28, 2013, Roberta Guardo and Andrea Guardo Green, also nieces of Decedent, filed a [p]etition to have Decedent declared an incapacitated person. By [d]ecree [dated] January 6, 2014, [Buzzuro] was named the Guardian of the Person of Anna Miscella, while Richard and Robert Mayer were named Co-Guardians of the Decedent's Estate. Richard and Robert Mayer were also relatives of the Decedent. Prior to the formal guardianship, [Buzzuro] had been exercising control of the Decedent's daily finances. Citing unhappiness with the situation, and the intrusion by her various relatives, [Buzzuro] filed a [p]etition with [the court] to remove herself as guardian of the person of Decedent. On March 14, 2014, following a hearing, other guardians were appointed to protect Decedent's person. [Buzzuro] then removed herself from the home she shared with Decedent the next day. On June 21, 2014, the home was destroyed by fire. Decedent later passed away on July 6, 2014.

Orphans' Court Opinion, 3/23/17, at 1-2.

Marisa Guardo was appointed as executrix of Decedent's will. In that capacity, on May 20, 2015, Guardo filed a petition for citation seeking an accounting by Buzzuro of her stewardship of the Decedent's finances for the time period June 2010 until March 2014. On October 23, 2015, Buzzuro filed a petition for declaratory judgment, in which she sought an order declaring that she was solely entitled to the proceeds of the homeowers insurance policy on the residence jointly owned by her and Decedent. The court held three hearings, on October 2, 2015, October 30, 2015, and May 11, 2016.

By order entered on January 7, 2016, the court denied Buzzuro's petition for declaratory judgment; however, on February 5, 2016, the court granted reconsideration and deferred its final determination until its resolution of all pending matters in the case. On August 4, 2016, the court ordered Buzzuro to file an account. Buzzuro filed her account on November 4, 2016, followed by an amended/supplemental account on December 23, 2016. The estate filed objections[1] to the account. Both parties filed briefs and, on March 23, 2017, the court issued an opinion and decree granting, in part, and denying, in part, the estate's objections to Buzzuro's account and imposing a surcharge against Buzzuro in the amount of $40,411.17. By the same order, the court denied Buzzuro's petition for declaratory judgment and ordered that Buzzuro and the estate are each entitled to one-half of the insurance proceeds.

On April 18, 2017, the estate filed a petition seeking to modify the court's March 23, 2017 order to correct certain alleged mathematical errors with regard to the surcharge against Buzzuro. The court granted reconsideration and ordered the parties to file briefs. On May 1, 2017, Buzzuro filed a counter-motion for reconsideration. In her motion, Buzzuro asked the court to reconsider its surcharge, "considering the [p]ower of [a]ttorney was only effective from Feb. 16, 2012 through [the court's] [d]ecree dated Jan. 6, 2014, in that it was unjust to require the same degree

---

[1] The parties and the court incorrectly refer to the estate's filing as "exceptions." Disputes to the accuracy of a fiduciary's account are properly referred to as "objections." **See** Pa.O.C.R. 2.7. We will use that term throughout this memorandum.

of record keeping and bookkeeping before and beyond said period as is required for an agent under a power of attorney." Buzzuro's Counter-Motion For Reconsideration, 5/1/17, at ¶ 2. Buzzuro also sought reconsideration on the issue of insurance proceeds. By opinion and order dated May 11, 2017, the court denied Buzzuro's motion for reconsideration as untimely. With respect to the estate's motion for reconsideration, the court corrected certain mathematical errors and adjusted the surcharge to a total of $44,486.04, in favor of the estate.

On June 12, 2017, Buzzuro filed a timely notice of appeal,[2] followed by a timely court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Buzzuro raises the following issues for our review:

> 1. Whether the [Orphans' Court] committed plain error and/or abused its discretion by denying [Buzzuro's] [m]otion for [d]eclaratory [j]udgment?
>
> 2. Whether the [Orphans' Court] committed plain error and/or abused its discretion in its ruling that the affirmative defense of merger applied to bar [Buzzuro's] full recovery under the facts set forth in the instant matter?
>
> 3. Whether the [Orphans' Court] committed plain error and/or abused its discretion in its finding of fact and conclusion of law that both the Estate of Anna Miscella and [Buzzuro] had an equal insurable interest in real property destroyed by fire[?]

---

[2] The thirtieth day after the entry of the order from which Buzzuro appeals fell on Saturday, May 10, 2017. Accordingly, Buzzuro had until Monday, May 12, 2017 to file her notice of appeal. *See* 1 Pa.C.S.A. § 1908 (whenever last day of appeal period falls on weekend or any legal holiday, such day shall be omitted from the computation of time).

4. Whether the [Orphans' Court] committed plain error and/or abused its discretion in its finding of fact and conclusion of law that [Buzzuro] was subject to an accounting and surcharge for periods of time both before and after the period covered by the [p]ower of [a]ttorney?

Brief of Appellant, at 5-6.

Buzzuro's first three appellate claims all raise essentially the same question: whether the Orphans' Court erred in finding that she and the estate were each entitled to one-half of the insurance proceeds from the residence Buzzuro owned as joint tenants with the Decedent, which was destroyed by fire during Decedent's lifetime. Thus, we will address those claims together.

We begin by noting our standard of review in a declaratory judgment action, which is:

limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court. The application of the law, however, is always subject to our review.

*In re Estate of Carter*, 159 A.3d 970, 974 (Pa. Super. 2017), quoting *Vignola v. Vignola*, 39 A.3d 390, 393 (Pa. Super. 2012) (citation omitted).

Here, Buzzuro argues that

[t]he estate did not arise until after the fire loss – Anna Miscella herself as a joint tenant suffered a loss, but by agreement and by the deed, her [] Estate simply could not, since after Anna's death, the Estate had no interest in the house's preservation; the fire loss of a non-probate asset is not a loss to the Estate.

Brief of Appellant, at 16-17. Buzzuro submits that, "[w]hile Anna Miscella certainly had an insurable interest [in the property] during her lifetime, her

- 5 -

Estate never did, and the lower court erred in failing to find and declare that the house fire insurance proceeds" belonged solely to Buzzuro.   Brief of Appellant, at 18.   Buzzuro's argument misses the mark and is meritless.

Pennsylvania law is well-settled that a party's right to recover under an insurance policy is determined by the terms of the policy and not the ownership of the underlying insured asset.  **Bryant v. Girard Bank**, 517 A.2d 968, 978 (Pa. Super. 1986).   Indeed, "[p]roperty ownership . . . is of minimal importance in determining entitlement to the proceeds of insurance, since the nature and extent of various rights and obligations of the parties are governed by the terms of the insurance contract."  **McDivitt v. Pymatuning Mutual Fire Ins. Co.**, 449 A.2d 612 (Pa. Super. 1982).   "A fire insurance policy is a personal contract.   An important feature of such indemnity is the personal equation that exists between insurer and insured.   The building itself is not insured; the indemnity is provided for the insured and for his interest in the property[.]"  **In re Gorman's Estate**, 184 A. 86, 87 (Pa. 1936).

> Under this contract the [fire] insurance company, in consideration of the premium paid to it, has assumed specified risks and has agreed to pay money to the parties insured upon the happening of certain events.   Such a policy is a personal contract, appertaining to the parties to the contract and not to the thing which is subject to the risk insured against.   Proceeds payable thereunder when an insured loss occurs take the place of the building destroyed only in the sense of being a thing of like value, not necessarily of like ownership.

**McDivitt**, 449 A.2d at 614–15, quoting with approval **Forsyth County v. Plemmons**, 163 S.E.2d 97 (N.C. App. 1968).

Pursuant to the homeowner's insurance contract at issue in this matter, both Decedent and Buzzuro were named insureds, contractually entitled to payment in the event of the occurrence of certain specified events, including fire. Accordingly, when, during Decedent's lifetime, the premises was destroyed by fire, Decedent's interest in, and entitlement to, the insurance proceeds resulting from the insured loss attached.[3] When Decedent died before the insurer issued payment, her personal interest in those proceeds passed to her estate.

In arguing that she is entitled to all of the insurance proceeds because the estate did not exist as an entity at the time of the fire, Buzzuro exhibits a fundamental misunderstanding of the well-settled legal fiction that an estate stands in the shoes of a decedent. Pursuant to section 301 of the Probate, Estates and Fiduciaries Code, legal title to all real and personal estate of a decedent passes at her death to her personal representative as of the date of death. 20 Pa.C.S.A. § 301. Thus, by its very nature, a decedent's estate can never exist prior to the death of the individual whose interests it assumes. The estate has an interest in the insurance proceeds because the Decedent was entitled to them during her life.

Moreover, Buzzuro's argument conflates property interests with insurable interests. Contrary to Buzzuro's argument, Decedent did not suffer a loss "as a joint tenant." Brief of Appellant, at 16-17. Rather, she suffered

---

[3] Indeed, had the insurer issued a check the day after the fire, there could be no dispute that the proceeds belonged to the Decedent.

a loss as a named insured under the terms of the contract of insurance. *McDivitt*, *supra*; *Gorman's Estate*, *supra*. Decedent's insurable interest, while arising from her property interest, was entirely separate from her interest in the property itself. Thus, while Buzzuro, as surviving joint tenant, succeeded by operation of law to sole ownership in and control of the premises at Decedent's death, *see In re Parkhurst's Estate*, 167 A.2d 476, 478 (Pa. 1961) ("The essence of title as joint tenants with the right of survivorship. . . is to vest in two or more persons joint ownerships during lifetime, with sole ownership and control passing to the survivor at the death of the other joint tenant."), Decedent's estate succeeded to her rights in the insurance proceeds to which Decedent became entitled during her lifetime by virtue of her indemnity contract with the insurer. *See* 20 Pa.C.S.A. § 301.

For the foregoing reasons, the Orphans' Court did not err in concluding that Buzzuro and the estate were each entitled to one-half of the proceeds of the homeowner's insurance policy.

Buzzuro's final claim is that the Orphans' Court erred in requiring her to account for, and for reviewing "under the heightened standards of documentation, record and bookkeeping required of a fiduciary agent," her stewardship of Decedent's funds during periods of time she was not acting pursuant to the power of attorney. Brief of Appellant, at 25. Buzzuro asserts that, for those time periods not covered by the power of attorney, she should not have been held to the standards of a fiduciary; rather, the estate should

have been required to demonstrate intentionally tortious conduct, such as trespass or conversion. *Id.* We conclude that Buzzuro has waived this claim.

In its petition for citation for accounting, the estate sought "an accounting of all assets of the Decedent expended by [Buzzuro], pursuant to her Power of Attorney, **or otherwise**, for the period June 15, 2010 through March 15, 2014," Petition for Citation, 5/20/15, at ¶ 28 (emphasis added), and sought reimbursement from Buzzuro for sums the court "determined wrongfully appropriated or **converted** by [Buzzuro]." *Id.* at Wherefore Clause (emphasis added). Buzzuro, in her response to the estate's petition, did not raise any issue objecting to the request that she account for time periods not covered by the power of attorney. Nor did Buzzuro file preliminary objections to the estate's petition. Indeed, it was not until after she had filed her account and the trial court rendered its decision that Buzzuro first raised the issue, in her counter-motion for reconsideration.

Issues not raised before the trial court are not preserved for appeal and may not be presented for the first time on appeal. Pa.R.A.P. 302(a); *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732, 743 (Pa. Super. 2009). Moreover, issues raised for the first time in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal. *Rabatin v. Allied Glove Corp.*, 24 A.3d 388, 391 (Pa. Super. 2011), citing *Prince George Center, Inc. v. U.S. Gypsum Co.*, 704 A.2d 141, 145 (Pa. Super. 1997).

In addition, Buzzuro has also waived this claim for failure to properly brief the issue on appeal. In her appellate brief, Buzzuro fails to cite any cases that support her claim that the court should have applied a different standard of care to her stewardship of the Decedent's funds during periods not covered by the power of attorney. The three cases Buzzuro does cite, without any discussion or explanation whatsoever, have no apparent relevance to the issue in question. The first, *Kennedy v. Consol. Energy, Inc.*, 116 A.3d 626 (Pa. Super. 2015), involves claims of quiet title, trespass, conversion, unjust enrichment, and replevin with respect to a dispute over ownership of coalbed gas rights. The second, *Shonberger v. Oswell*, 530 A.2d 112 (Pa. Super. 1987), involves an action for conversion against a consignment store owner. The third and final case cited by Buzzaro is a non-precedential common pleas court decision from Lehigh County.

Failure to cite authority in support of a claim results in waiver of that argument. *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 444 (Pa. Super. 2008). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007). Thus, Buzzuro's failure to cite any relevant authority supporting her position also results in the waiver of her claim.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/27/18</u>