528 A.2d 947

**Joseph Edward MARTIN, Appellant,**

**v.**

**OWENS–CORNING FIBERGLAS CORPORATION, Eagle-Picher Industries, Inc., Forty-Eight Insulation Incorporated, The Celotex Corporation, Combustion Engineering, Inc., and Owens-Illinois, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued March 12, 1987.

Decided July 10, 1987.

Reargument Denied Oct. 13, 1987.

William R. Caroselli, Caroselli, Spagnolli & Beachler, Pittsburgh, for appellant.

Martin Greitzer, Greitzer and Locks, Philadelphia, amicus curiae for Joseph Edward Martin.

Patrick R. Riley, Edward L. Russakoff, Pittsburgh, for Owens Corning Fiberglas, Eagle-Picher, Celotex and Owens-Illinois.

R. Kenneth Willman, Pittsburgh, for Combustion Engineering.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue before the Court in this products liability case is whether the trial court committed reversible error in instructing the jury that it could apportion damages between defendant-appellees and plaintiff-appellant.

Appellant, Joseph Edward Martin, filed a complaint in trespass on August 16, 1978, against appellees seeking compensatory and punitive damages for asbestosis and related diseases which he claimed were caused as a result of

working with products containing asbestos manufactured by appellees.[1]

Appellant presented expert witnesses at trial who testified that his disability was due to both asbestosis, caused by asbestos exposure, and emphysema, caused by appellant's long-term cigarette smoking and aggravated by asbestos exposure and the resulting asbestosis. Appellees presented expert testimony that appellant's disability was solely the result of emphysema, caused by cigarette smoking. The trial court instructed the jury on apportionment as follows:

> ... If, however, you find that his condition is due both to his cigarette smoking and his exposure to asbestos, then you first determine what the total amount of damages are, and then the next thing you do is to determine what percentage of his condition is due to cigarette smoking, and then you will reduce the total amount by the percentage that you find is due to cigarette smoking.

(N.T., Vol. V at 87.) The jury thereafter returned a verdict of $67,000 in favor of appellant,[2] although appellant presented testimony that his loss of earnings was greatly in excess of that amount. (N.T. 134–144.)[3]

The trial court denied appellant's motions for a new trial. Superior Court, on appeal by appellant and cross-appeal by appellee Combustion Engineering, Inc., reversed on the basis of trial error not relevant here and remanded for a new trial limited to the issue of damages. *Martin v. Johns-Manville Corp.*, 322 Pa.Super. 348, 469 A.2d 655 (1983). This Court granted appellees' petition for allowance, reversed Superior Court's order and remanded this case to Superior Court for consideration of the instant apportionment issue, which that Court found unnecessary

1. Joseph Edward Martin died on August 1, 1982 while post-trial motions were pending.

2. Appellant's claim for punitive damages was not presented to the jury.

3. Appellant asserts he established loss of earnings of at least $177,000. Superior Court estimated the amount at $118,000. In any event, the verdict was far below the loss of earnings established by appellant at trial.

to address earlier. *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985). On remand, Superior Court rejected appellant's argument and found that the causes of harm were "distinct and capable of rough approximation," and affirmed the trial court's denial of appellant's motion for a new trial. *Martin v. Johns-Manville Corp.*, 349 Pa.Super. 46, 59, 502 A.2d 1264, 1271 (1985).

We granted appellant's petition for allowance on July 1, 1986. We now hold that there was no evidence presented at trial upon which the trial court could properly submit the issue of apportionment to the jury. Thus, we reverse Superior Court's affirmance of the trial court's denial of a new trial.

We begin our analysis as we did when this case was before this Court previously, by noting our scope of review. "[T]he grant or denial of a new trial will not be reversed on appeal absent either an error of law which controlled the outcome of the case, *Anzelone v. Jesperson*, 436 Pa. 28, 30, 258 A.2d 510, 510 (1969); *Allison v. Snelling & Snelling, Inc.*, 425 Pa. 519, 521, 229 A.2d 861, 862 (1967), or a palpable abuse of discretion where the ruling turns on the weight of the evidence, *Lobozzo v. Adam Eidenmiller, Inc.*, 437 Pa. 360, 367–68, 263 A.2d 432, 436 (1970)." *Martin v. Johns-Manville, supra*, 508 Pa. at 163, 494 A.2d at 1083.

The rules in this Commonwealth governing apportionment of damages are consistent with those expressed in the Restatement (Second) of Torts:

§ 433 A. Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

See, e.g., *Offensend v. Atlantic Refining Co.*, 322 Pa. 399, 185 A.2d 745 (1936); *McAllister v. Pennsylvania Railroad*

*Company,* 324 Pa. 65, 187 A. 415 (1936); *Embrey v. Borough of West Mifflin,* 257 Pa.Super. 168, 390 A.2d 765 (1978). "The rules stated apply also where one of the causes in question is the conduct of the plaintiff himself, whether it be negligent or innocent." Restatement (Second) of Torts § 433A, comment (a). The trial court must determine, as a matter of law, whether the harm is capable of apportionment, *Voyles v. Corwin,* 295 Pa.Super. 126, 130, 441 A.2d 381, 383 (1982); Restatement (Second) of Torts § 434(1)(b), and the burden of proving apportionment rests on the party seeking it. Restatement (Second) of Torts § 433B(2).

 In this case, § 433A(1)(b) is applicable since the single harm to appellant was his disability due to the decreased function of his lungs. Thus, it was incumbent upon the trial court to determine that there was a reasonable basis for apportioning the harm between the two causes before submitting that issue to the jury. In this regard, the trial court concluded "[t]here was adequate evidence which would support a jury's determination that the acts of [appellant] and the acts of the [appellees] caused separate and identifiable damages." (Trial Court Opinion at p. 39.) We disagree.

Testimony at trial established that appellant worked at various jobs between the years 1939 and 1978, when he became disabled, applying and removing asbestos insulation products to and from pipes and boilers. Also, appellant began smoking cigarettes in 1941, and eventually increased his smoking to two packs a day by 1960. Appellant maintained that level of smoking through 1978. (N.T., Vol. I at 349–50.)

Testimony from appellant's family doctor was presented by way of deposition concerning appellant's history of respiratory problems beginning in 1968. (N.T., Vol. III at 171–203.)

Five expert witnesses analyzed x-rays and described in some detail the evidence of both emphysema and asbestosis present in appellant's lungs. Results of physical examina-

tions given appellant were also discussed at some length. Of the five expert witnesses presented at trial, three were asked if they had opinions concerning the cause of appellant's disability. Dr. Sachs and Dr. Laman, called on behalf of appellant, each expressed the opinion that asbestos exposure and cigarette smoking were both significant causes of his disability. (N.T., Vol IA at 787, Vol. II at 19.) Dr. Shively, called on behalf of appellees, testified that, in his opinion, appellant's asbestosis was not very advanced and played no role in appellant's disability, which he attributed solely to emphysema caused by cigarette smoking. (N.T., Vol. IV at 107.) The jury resolved this dispute in expert testimony in favor of appellant, as evidenced by the verdict, since the trial court properly instructed the jury not to award damages if cigarette smoking was the sole cause of appellant's disability. (N.T., Vol. V at 86–87.)

Additionally, Dr. Sachs was asked to separate out the relative contributions of each of the diseases to appellant's disability. Dr. Sachs responded:

> I can't separate these two diseases for you in terms of percentage. My opinion is that both play a significant role in this man's disability, but I have no way of equating them or breaking them down. I can't tell you that asbestos contributed 48% and emphysema 52%, I don't know how to do that. There is no way I know of to separate these two diseases which are so closely intertwined.

> I believe that both of them exist to a significant degree and they are both significant factors in this man's disability. That is the best I can do with that.

(N.T., Vol. IA at 787.)

Dr. Laman testified:

> It is not possible for me to separate out the relative contribution of cigarette smoking and asbestos from the cause of his obstructive pulmonary disease and the cause of his total and permanent disability. Both factors are

important in producing the effect and the pulmonary disability that he has.

(N.T., Vol. IIA at 19.)

Dr. Laman further testified:

It is not possible to separate out what fraction of his lung disease is due to cigarette smoking, what factor, what fraction is due to asbestosis.

(N.T., Vol. IIA at 27.)

Finally, Dr. Laman stated:

... Both cigarette smoking and asbestos exposure and asbestosis result in obstructive defects on ventilatory testing. Since both testing lead to obstructive defect, it becomes difficult to impossible to accurately ascribe a fraction of the defect due to one thing or the other.

(N.T., Vol. IIA at 27–28.)

■ The jury, although presented with a great deal of testimony concerning appellant's history and physical condition, was provided no guidance in determining the relative contributions of asbestos exposure and cigarette smoking to appellant's disability. In fact, two experts testified that such a determination was not possible. A situation analagous to the instant case arose in *Offensend v. Atlantic Refining Co., supra.* There, a jury award of damages for aggravation of an existing tubercular condition was modified (reduced), because the expert testimony did not address the duration of the aggravation. "If the doctors were not in a position to make an estimate of the extent of the aggravation in point of time, the jury should not have been allowed to hazard a guess beyond the period shown with reasonable certainty." *Id.,* 322 Pa. at 404, 185 A.2d 745. Here, as in *Offensend,* the jury cannot be expected to draw conclusions which medical experts, relying on the same evidence, could not draw. The causes of disability in this case do not lend themselves to separation by lay-persons on any reasonable basis.[4] Thus, common sense and common

4. Compare, *McAllister v. Pennsylvania Railroad Co., supra.* (Medical testimony and other proofs made it possible for jury to arrive at a reasonable basis of apportionment), with *Capone v. Donovan,* 332

experience possessed by a jury do not serve as substitutes for expert guidance, and it follows that any apportionment by the jury in this case was a result of speculation and conjecture and hence, improper.[5] "Rough approximation" is no substitute for justice.[6]

The trial court erred by presenting the issue of apportionment to the jury.[7]

The trial court's error resulted in an inadequate verdict in this case, since the jury obviously apportioned to arrive at the verdict of $67,000, which is far below even a conservative estimate of the damages established at trial. *See* note 3, *supra*. Where, as here, no challenge is raised regarding liability, and the only trial error involves the issue of damages, the appropriate remedy is a new trial limited to the issue of damages. *Troncatti v. Smereczniak*, 428 Pa. 7, 10, 235 A.2d 345, 346 (1967). *See also, Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978); *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970).

Superior Court's order is reversed. The order of the trial court denying appellant's motions for a new trial is vacated and the case is remanded to the Court of Common Pleas of Allegheny County for a new trial limited to the issue of damages.

Pa.Super. 185, 480 A.2d 1249 (1984). (Apportionment on reasonable basis not possible where three physicians each failed to properly diagnose fracture of plaintiff's arm.)

5. *Rice v. Hill*, 315 Pa. 166, 173, 172 A. 289, 291–92 (1934). (A jury may not award damages based upon speculation or conjecture.)

6. As stated by Dean Prosser and Dean Keeton:
Certain results, by their very nature, are obviously incapable of any reasonable or practical division ... no ingenuity can suggest anything more than a purely arbitrary apportionment of such harm. Where two or more causes combine to produce such a single result, incapable of any reasonable division, each may be a substantial factor in bringing about the loss, and if so, each is charged with all of it.
Prosser and Keeton on Torts § 52 at p. 347 (5th Ed.1984).

7. Thus, it is unnecessary to address appellant's remaining claims which challenge the sufficiency of the trial court's instructions on apportionment.

McDERMOTT, J., filed a concurring opinion.

NIX, C.J., filed a dissenting opinion joined by ZAPPALA, J.

HUTCHINSON, J., filed a dissenting opinion.

McDERMOTT, Justice, concurring.

The Majority Opinion stands for a single proposition, i.e., under the facts and circumstances of this case there was not enough evidence to submit the issue of apportionment to the jury. With this I can agree.

However, this case should not be construed as standing for the proposition that evidence of contributory negligence is inadmissible in an asbestosis case. Furthermore, it should not be interpreted as precluding the defendants in this case from introducing new evidence of decedent's negligence, nor precluding a jury from returning a lesser verdict if the evidence would support such.

NIX, Chief Justice, dissenting.

In this case the medical testimony was thorough, and it is clear that there is no basis for precisely determining the contribution of each of the two causes present under these facts. Thus a remand for a new trial limited to the issue of damages will serve no purpose. If we are to follow the Restatement formulation it should be properly applied.

Section 431 of the Restatement (Second) of Torts establishes the test for liability as being whether the defendant's conduct is a substantial factor in bringing about the harm. Unquestionably, the environment was a substantial factor. However, from the medical testimony, cigarette smoking was also a substantial factor.[1] Since the employer created one of the substantial causes, it should not escape liability because a precise measurement cannot be made as to the

1. This is not a situation as described in the Comment on Clause (a) of section 433. That comment in pertinent part states: "... although no one of the contributing factors may have such a predominant effect, their combined effect may ... so dilute the effects of the actor's negligence as to prevent it from being a substantial factor." Here both factors were active in bringing about the harm.

effect of that harm. The jury in this case did find that the harm caused by the employer was a substantial factor, for which the amount of proper contribution was found to be Sixty-seven Thousand Dollars ($67,000). The fact that the majority is not satisfied as to the amount assigned by the jury is of no moment. The majority criticizes the Superior Court for accepting what they characterized as a "rough approximation" of the employer's responsibility. On this record only a "rough approximation" can be made. If we accept that a verdict may be returned in favor of claimant where his own actions were also a substantial cause in bringing about the harm he sustained, then we must accept the "rough approximations" that juries must render. The alternative is to suggest that no recovery should be allowed. Such a result would, in my judgment, be unconscionable where, as here, it is established that the employer's action was a substantial factor in producing the resultant harm.

I therefore would affirm the judgment of the Superior Court.

ZAPPALA, J., joins in this dissenting opinion.

HUTCHINSON, Justice, dissenting.

I dissent. I believe that the majority has overstepped its bounds and usurped the jury's factfinding function by vacating its verdict on damages. It does so by a selective and, I believe, misleading statement of the facts. The following summary, taken from Superior Court's opinion, more fully and accurately sets out the evidence on which the court gave the instruction at issue and the jury gave its verdict.

"Six physicians testified at length regarding appellant's condition. In addition to Dr. Koenig, Jerome F. Wiot, M.D., a radiologist, Murray Sachs, M.D., a pulmonary specialist, and David Laman, M.D., also a pulmonary specialist, testified on appellant's behalf. Morris Zachary Gardner, M.D., a radiologist, and John G. Shively, M.D., a pulmonary specialist, testified on behalf of appellees. Their testimony on the question of the causes of appellant's disability may be summarized as follows.

"Dr. Sachs, Dr. Wiot and Dr. Laman agreed that appellant suffered from pulmonary disease having both obstructive and restrictive components. *See, e.g.,* N.T. Vol. II–A at 10; N.T. Vol. I–A at 764–65. Dr. Wiot explained that with an obstructive lung disease, the airway passages in the lungs are blocked. *Id.* at 724. Dr. Sachs explained that with a restrictive lung disease, the lungs do not fill to capacity.... *Id.* at 768.

"Testimony of appellant's witnesses established that asbestosis is primarily a restrictive lung disease, *id.* at 769–70 (Sachs); 726 (Wiot), and that emphysema and chronic bronchitis, primarily caused by cigarette smoking, *id.,* are obstructive lung diseases. Dr. Laman stated, however, that while cigarette smoking is a substantial factor in the development of obstructive lung disease, asbestosis has an obstructive component as well, for when asbestos fibers become deposited in small airways in the lungs the air passages become blocked. N.T. Vol. II–A at 16.

"Dr. Wiot, whom appellant had retained to examine his chest x-rays, but who had not otherwise examined appellant, described his findings at trial with the use of the x-rays. He observed 'emphysematous changes' and 'bullous changes' in the upper portion of the lungs. N.T. Vol. I–A at 667. He explained that bullous changes represent a breakdown in pulmonary tissue and are indicative of emphysema. *Id.* at 693–94. *See also id.* at 776–77 (testimony of Dr. Sachs). Dr. Wiot also stated that the x-rays showed 'long-standing obstructive lung disease.' *Id.* Dr. Laman testified that it is not uncommon for cigarette smokers to develop bullae. N.T. Vol. II–A at 23. *See also* N.T. Vol. I–A at 694 (Wiot). Dr. Wiot and Dr. Sachs agreed that appellant has emphysema. N.T. Vol. I–A at 694, 776–77.

"In further reviewing appellant's x-rays at trial, Dr. Wiot observed pleural plaques from the mid-zones of the lungs down. *Id.* at 669–70. Dr. Laman and Dr. Sachs likewise found pleural plaques in the lower two-thirds of the lung field. N.T. Vol. II–A at 12; Vol. I–A at 749. Dr. Wiot, Dr. Sachs and Dr. Laman agreed that pleural plaques are

caused by inhalation of asbestos fibers. *Id.* at 697–98, 769–70; Vol. II–A at 13–14. Dr. Wiot described the system used to classify pleural plaques by the density of the opacity and by the number of opacities present in the lungs. Although he described the opacities found in appellant's lungs as small and irregular, he noted that the size of the opacity bears little relationship to the extent of disability that a person has suffered. N.T. I–A at 667, 683–84.

"Testifying for appellees, Dr. Shively stated that appellant's chest x-rays showed one pleural plaque consistent with asbestos and that pulmonary function studies that he had conducted of appellant revealed a restrictive lung problem. N.T. Vol. IV at 106–10. Dr. Gardner testified that in his review of appellant's x-ray he also found pleural plaques but that they were of 'the most minimal positive category. I definitely did identify them but in very, very low quantity, very mild, very minimal.' *Id.* at 14–16. He further stated that while the plaques were consistent with asbestosis, he would expect to find more of them before making a diagnosis of asbestosis. *Id.* at 17–18. He thus concluded that the x-rays 'are not absolutely diagnostic of asbestosis.' *Id.* at 18. Both Dr. Shively and Dr. Gardner agreed that the x-rays showed chronic obstructive lung disease, caused, Dr. Shively stated, by smoking. *Id.* at 13, 107.

"As to the causes of appellant's disability, his witnesses agreed that both asbestosis and cigarette smoking where significant factors. Dr. Sachs testified as follows:

Q. Now, Mr. Caroselli [counsel for appellant] asked you what role asbestosis played in that disability and I am going to ask you, are you able to differentiate and tell us what role the emphysema played in his disability?

A. I can't separate these two diseases for you in terms of percentage. My opinion is that both play a significant role in this man's disability, but I have no way of equating them or breaking them down. I can't tell you that asbestos contributed 48% and emphysema 52%, I don't know how to do that. There is no way I

know of to separate these two diseases which are so closely intertwined.

I believe that both of them exist to a significant degree and they are both significant factors in this man's disability. That is the best I can do with that.

Q. Would the impairment due to chronic bronchitis and due to emphysema be disabling?

First of all, can you answer that: Maybe you don't know.

A. I don't know how much emphysema he has because superimposed on the emphysema is a significant amount of pleural thickening and fibrosis in the lungs. So if we were to take those away, I don't know if the remaining lung would be normal or not. I have no way of knowing that.

Q. Just so I understand it correctly, what you are saying is you can't tell us the degree to which this man would be disabled solely from the chronic bronchitis and the emphysema?

A. I don't know how to give you a percentage.

Q. However, my understanding is that it is your opinion that the emphysema and bronchitis are significant factors in whatever disability he may have.

A. That is correct.

Q. And am I correct that his longstanding cigarette smoking is a significant factor in his disability?

A. It is a factor in the sense that it enhances the genesis of bronchitis and emphysema and many people think it enhances the genesis of asbestosis. That is it enhances the fibrosis of asbestosis and certainly enhances the associated complication of asbestosis.

Q. Touching on that point while we are talking about chronic obstructive lung disease, am I correct that the cause of that disease syndrome would be Mr. Martin's cigarette-smoking history? Would that be a cause?

A. Yes, I believe that that is the most likely affiliated factor.

N.T. Vol. I–A at 787–89.

"Dr. Laman testified:

Q. And do you have an opinion, Doctor, with reasonable medical certainty, whether or not his asbestosis is a substantial factor in his total and permanent disability?

A. Yes. His asbestosis is a substantial factor in his total and permanent disability.

Q. And finally, Doctor, are you able to ascribe or indicate to the jury what percentage of his disability is total and permanent disability as attributable to his asbestosis and what percentage is attributable to his cigarette smoking?

A. It is not possible for me to separate out the relative contribution of cigarette smoking and asbestos from the cause of his obstructive pulmonary disease and the cause of his total and permanent disability. Both factors are important in producing the effect and the pulmonary disability that he has.

N.T. Vol. II–A at 18–19.

It was Dr. Shively's view that while 'there were radiographic findings consistent with asbestosis.... [t]here was no evidence ... that the asbestos exposure ... contributed at all to [appellant's] impairment.' N.T. Vol. IV at 115. He gave the opinion that appellant's disability was caused by chronic obstructive lung disease with pulmonary emphysema and chronic bronchitis, which in turn were caused by cigarette smoking. *Id.* at 114."

349 Pa.Sup.Ct. 46, 51–55, 502 A.2d 1264, 1267–69 (1985).

Since the jury found appellee partially liable the majority assumes that it rejected all of Dr. Shively's testimony. This is not necessarily the case. A jury may choose to believe all, some or none of a witness's testimony. *Weidemoyer v. Swartz*, 407 Pa. 282, 180 A.2d 19 (1962). Here, the jury could have credited Dr. Shively's testimony that appellant

suffered substantial disability from cigarette smoking but still have believed appellant's experts' testimony that asbestos exposure also played a significant part.

I am at a loss to imagine what additional testimony would satisfy the majority. Requiring the experts to speak in terms of numerical percentages [1] introduces a false precision into the evidence. Mathematical exactitude is not found in the real world of medicine. We should not mislead lay jurors by requiring experts to falsely imply its existence. Honest, but more flexible, words such as "substantial factor," "major contribution" or "significant cause" are more suitable to the proper jury function of justly and fairly resolving uncertainties. It is unfair and unjust to place on appellee the whole burden of supporting appellant for a disability his own experts admit he himself substantially caused. The rule "drafted" for Section 433A of the Restatement does not reduce that injustice and the "law" written by its draftsmen, who were never elected to the legislature, finds its only authority in reason and need not be followed to an unjust result.

Indeed, properly read and applied to this case, the reason behind section 433A of the Restatement is not violated here or inconsistent with the jury verdict. The evidence favoring apportionment of damages provides a "reasonable basis" for that verdict, which simply took into account the "substantial" adverse impact appellant's own conduct had on his condition. Determining facts from conflicting and confusing evidence like that presented here is the jury's function. *General Electric Credit Corp. v. Aetna Casualty & Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970); *Mapp v. Wombucker*, 421 Pa. 383, 219 A.2d 681 (1966). I would affirm on the opinion in Superior Court. *Martin v. Owens-Corning Fiberglas Corp.*, 349 Pa.Sup.Ct. 46, 502 A.2d 1264 (1985).

**1.** Appellant does not argue that experts must testify in mathematical terms about the contribution of each disease to the total disability. Such testimony is not required under our well established precedent, *Osterling v. Frick*, 284 Pa. 397, 131 A. 250 (1925), or by the Restatement (Second) of Torts.