**[J-10A-2019 and J-10B-2019] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| WILLIAM C. ROVERANO AND JACQUELINE ROVERANO, H/W, | : | No. 26 EAP 2018 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| Appellants | : | Court entered on December 28, 2017 |
| | : | at No. 2837 EDA 2016 affirming in |
| | : | part, reversing in part and remanding |
| v. | : | the Order entered on July 27, 2016 in |
| | : | the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| JOHN CRANE, INC. AND BRAND INSULATIONS, INC., | : | No. 1123 March Term, 2014. |
| | : | |
| | : | ARGUED:  March 6, 2019 |
| Appellees | : | |

| | | |
|---|---|---|
| WILLIAM ROVERANO, | : | No. 27 EAP 2018 |
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered on December 28, 2017 |
| | : | at No. 2847 EDA 2016 affirming in |
| v. | : | part, reversing in part and remanding |
| | : | the Order entered on July 27, 2016 in |
| | : | the Court of Common Pleas, |
| JOHN CRANE, INC., | : | Philadelphia County, Civil Division at |
| | : | No. 1123 March Term, 2014. |
| Appellee | : | |
| | : | ARGUED:  March 6, 2019 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                      **DECIDED:  February 19, 2020**

**I.**

I agree with the Majority that nothing in the Fair Share Act, 42 Pa.C.S. § 7102

("FSA"),[1] signals the General Assembly's intent to displace the fundamental principle that

---

[1]     Act of April 28, 1978, P.L. 202, No. 53, § 10, *as renumbered and amended*, 42 Pa.C.S. § 7102 ("Comparative negligence").

one cannot apportion financial responsibility disparately among defendants when they are found strictly liable rather than negligent, but rather must allocate liability *per capita*. *See Baker v. ACandS*, 755 A.2d 664, 669 (Pa. 2000). The only coherent way to assign unequal shares of liability among multiple defendants is to assess relative blameworthiness, and that leads inevitably to considerations indistinguishable from fault. But this Court steadfastly has eschewed fault-based analysis in strict liability.

As this Court has explained:

> [T]he tortious conduct at issue [in strict liability] is not the same as that found in traditional claims of negligence and commonly associated with the more colloquial notion of "fault." In this sense, introducing a colloquial notion of "fault" into the conversation relating to strict product liability in tort detracts from the precision required to keep this legal proposition within rational bounds.

*Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400 (Pa. 2014). Liability simply cannot be allocated differently among several *strictly* liable defendants, at least in cases involving an indivisible injury like asbestos-related cancer, without resort to some arbitrary rubric inconsistent with the animating theory of strict liability.

I find it telling that, despite the most recent amendment to the FSA's[2] sweeping overhaul of liability exposure in multiple-defendant cases, and despite its nominal introduction of strict liability into 42 Pa.C.S. § 7102, Section 7102 retained the title, "comparative negligence." With this continuing reference to negligence, the legislature implied that "fault" continues to gird the newly prescribed allocative inquiry.[3] Importantly, the General Assembly amended this section against a framework in which joint and

---

[2] *See* Act of June 28, 2011, P.L. 78, No. 17, § 1.

[3] We may consider titles of statutory provisions to aid in statutory construction, although titles do not control our interpretation. *See* 1 Pa.C.S. § 1924.

several liability had functioned not as the final word on multiple defendants' respective degrees of responsibility, but rather as a mechanism to hasten a plaintiff's full recovery, leaving jointly liable defendants to litigate separately their relative measures of responsibility in a contribution action. *See generally Baker, supra*. With the 2011 amendment, the General Assembly effectively folded the allocative function formerly served by contribution actions into the trial at which the defendants' liability and the plaintiff's damages were litigated. In doing so, the legislature also denied plaintiffs the option of recovering from any one defendant more than that defendant's share of liability. This much can be gleaned from the statute itself and is undisputed. What cannot be gleaned from the text of the statute is the legislature's clear intent to abrogate the common-law principle that strict liability is not amenable to disparate apportionment when more than one defendant is found strictly liable for a plaintiff's injury. As the Majority persuasively explains, we should not infer that the legislature intended to supplant established common law without clearer evidence than we find in Section 7102. *See* Maj. Op. at 20-24; *see also In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003) ("Under [the Statutory Construction] Act an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.").

The Chief Justice, in his Concurring and Dissenting Opinion, finds support for the contrary view in a subtle shift in language from the relevant provision of former Section 7102, which directed apportionment based upon the defendant's relative "causal negligence," 42 Pa.C.S. § 7102(b) (repealed), to that of present Section 7102, which directs allocation based upon the defendant's relative "liability." 42 Pa.C.S.

§ 7102(a.1)(1). The Chief Justice views this alteration as indicative of the General Assembly's intent to subject strict liability claims to the apportionment approach. *See* Conc. & Diss. Op. at 2 n.1. Yet, his analysis disregards the divergent connotations of *negligence* liability and *strict* liability. As set forth at length in *Tincher*, *strict* liability is effectively absolute. It is a species of the common law of torts informed more by principles of warranty and social justice than by notions of fault. Strict liability has long established a duty, independent of fault in the common sense, informed by "[t]he hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." William L. Prosser, Palsgraf *Revisited*, 52 MICH. L. REV. 1, 14-15 (1953).

In strict liability, the relevant inquiry is binary: *if* the defendant put the product that caused the plaintiff's harm into the stream of commerce, and *if* that product was defective under one of the relevant rubrics,[4] *then* the defendant is liable. Not a lot liable. Not a little liable. Just *liable*. In this context, disparate apportionment for a single injury can only be arbitrary, if not utterly nonsensical. As the Majority explains, nothing in the 2011 amendments to the FSA preempts the conclusion that the General Assembly understood that allocation in strict liability actions would continue to be *per capita* as our case law requires. The fine-grained distinction upon which the Chief Justice relies falls well short of the affirmative steps we typically require of the legislature before we determine that it intended to abrogate established common law.

---

[4] In *Tincher*, we established at length that the plaintiff may seek to establish strict liability on the "consumer expectations" and/or "risk-utility" theory. *See Tincher*, 104 A.3d at 406-07.

I read the General Assembly's use of the term strict liability in the FSA as embodying all of the various properties we have ascribed to that form of liability, including the rejection of the fault-based principles necessary to apportion liability in a non-arbitrary fashion.[5] Its appearance in Section 7102 is not without effect, even absent subjecting strict liability to disparate apportionment. By adding strict liability to Section 7102, the General Assembly made clear that it intended to eliminate joint and several liability for strict liability cases as well as for other negligence actions. But in providing that strict liability would apply to defendants severally rather than jointly, the General Assembly neither said nor clearly implied that it intended to displace *per capita* apportionment in strict liability cases.

I also agree with the Majority that there is no principled way to apportion relative liability in asbestos cases. In determining what constitutes substantial causation in asbestos cases, we have rejected the view that any one causative exposure can be identified where a party with asbestos-related disease was subject to multiple exposures. *See Rost v. Ford Motor Co.*, 151 A.3d 1032, 1045-46 (Pa. 2016). In this case, as in

---

[5] Even if the legislature intended to transmogrify the connotation of "strict liability" to embody fault, I would remain deeply skeptical. The General Assembly certainly may modify the common law by statute. It could perhaps abrogate strict liability entirely and replace it with something that incorporates some variation of fault, provided it does so in conformity with the general requirements of Article I, Section 11, of the Pennsylvania Constitution, which requires that a "remedy by due course of law" be available for any injury to one's "lands, goods, person or reputation." *Cf. Yanakos v. UPMC*, 218 A.3d 1214, 1240-41 (Pa. 2019) (Wecht, J., dissenting) ("Article I, Section 11 should be understood to impose some outer limit on the General Assembly's power to enact legislation that curtails or eliminates a common law cause of action."). But merely calling something strict liability does not make it so. "You can call a camel an elephant but that won't make its hump disappear. Labels do not change substance." *Houston Gen. Ins. Co. v. Brock Const. Co.*, 246 S.E.2d 316, 319 (Ga. 1978) (Undercofler, P.J., concurring). Strict liability that relies upon fault is no longer strict in any intelligible sense.

others, the medical experts agreed that "there is no scientific basis to determine which asbestos-containing product caused Mr. Roverano's lung cancer." *See* Maj. Op. at 26. The injury is indivisible; it cannot be separated into constituent parts. Necessarily, then, any attempt to deem one defendant *more* responsible than another—whether as a matter of "fault" or some other nominal allocative metric—would be arbitrary. Our law is clear that to invite or allow juries to make such arbitrary distinctions disserves the interests of justice. *See id.* (discussing *Martin v. Owens-Corning Fiberglass Corp.*, 528 A.2d 947 (Pa. 1987)). Where expert evidence cannot furnish a scientific basis upon which to allocate relative liability, any apportionment by the jury must stem only from conjecture. *See id.* A "[r]ough approximation," the *Martin* Court explained, "is no substitute for justice." *Martin*, 528 A.2d at 950.

The Chief Justice's answer to the sheer impossibility of principled apportionment is unconvincing. In disputing the Majority's reliance upon *Martin*'s rejection of rough approximations, he observes that "courts have come to accept abstract assessments of increased risk as proxies for traditional substantial-factor causation," because asbestos cases "involv[e] frequently undocumented, unquantified, and sometimes small exposures to many different sources of asbestos occurring long ago." Conc. & Diss. Op. at 4. In so many words, the Dissent suggests that, because "'rough approximation' is at best a generous characterization for what occurs on a routine basis in asbestos-related trials," one more "rough approximation" based upon relative risk won't hurt. *Id.*

We have adopted the "frequency, regularity, and proximity test" for substantial causation as a practical means to protect manufacturers from liability when the plaintiff's exposure to their products was *de minimis*. The test also ensures that a plaintiff will be

able to recover where he can establish that his exposure to a given manufacturer's product was more than *de minimis.* *See Rost*, 151 A.3d at 1043. The Chief Justice's proposed resort to a "risk-based" assessment suggests a reliance upon similar considerations for purposes of estimating comparative liability among multiple parties. However, the frequency, regularity, and proximity rubric is merely a practical framework for the fundamentally binary inquiry regarding substantial causation in multiple-exposure cases. It is not a suitable method for apportioning liability disparately among multiple defendants as to whom the plaintiff's exposure satisfies the test, approximately or otherwise. Applying the frequency, regularity, and proximity test in the former sense does not require a "rough approximation" so much as it does the satisfaction of a threshold— another fundamentally binary question. Only in applying it to an allocation of liability does it truly become the "rough approximation" that the Majority is right to reject. Thus, I join the Majority's conclusion that the prevailing *per capita* method of allocation must continue.

## II.

I also join the Majority's determination that the Superior Court correctly concluded that settling bankruptcy trusts must be included on the verdict sheet so that the jury may determine their factual liability in furtherance of a fair (*per capita*) allocation of liability among responsible parties.

As has been noted in the past, the rejection of fault-based principles in strict liability in favor of a warranty-inflected basis for liability, combined with traditional principles of joint liability, risked burdening certain defendants unfairly. But with the 2011 FSA amendments, the General Assembly broadly eliminated traditional joint liability in favor of allocating liability among tortfeasors in proportion to their relative responsibility for the

plaintiff's injury, so that no defendant is even temporarily responsible to the plaintiff for more than that defendant's particular share of liability.

In furtherance of that goal, Subsection 7102(a.2) calls for the submission of settling defendants or other settling parties to the jury to enable it to resolve "the question of liability" in furtherance of "apportioning liability." 42 Pa.C.S. § 7102(a.2). The point of apportionment generally is to ensure that no named defendant pays more than its "fair share" of the verdict—in the context of strict liability, calculated *per capita* among all individuals and entities whose products are deemed to have substantially caused the plaintiff's harm. Notably, the liability even of those who settle with plaintiffs is not a foregone conclusion, and many releases executed in tandem with settlements disclaim any admission of liability. In the context of *per capita* apportionment, then, submitting settling parties to the jury serves only to enable the jury to determine how many parties caused the plaintiff's harm, enhancing the accuracy of the head count comprising the denominator of the equation by which a liable defendant's share of liability is calculated. With every settling party that the jury deems liable, the share of the verdict attributable to each non-settling, liable defendant is reduced.

The FSA specifically provides that—*just* for purposes of apportioning liability—"the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party." *Id.* JCI and Brand argue that the trial court erred in excluding certain bankruptcy trusts that had settled with the Roveranos, because such trusts qualify as "other person[s] who [have] entered into a release with the plaintiff with respect to the action" for purposes of apportionment of

liability. *Id.* In pretrial proceedings, the trial court granted the Roveranos' request to exclude such parties. At the time of the request, the Roveranos acknowledged only having filed *claims* with certain specific trusts, but did not indicate whether they had reached terms or executed any settlement agreements with them. The trial went to verdict without the inclusion of any trusts.

In their post-trial motions, JCI and Brand both asserted that the trial court erred in refusing to include settling bankruptcy trusts on the verdict sheet, but focused their argument on Johns-Manville/Manville Asbestos Trust ("Manville"), which settled with the Roveranos only after JCI filed a Joinder Complaint against Manville. *See* JCI Post-Trial Motion at 13-14 ¶ 17; Brand Post-Trial Motion ¶¶ 20-21. As for the other trusts, Defendants only asked the trial court to mold the verdict to reduce it by the amounts the Roveranos had recovered or would recover from bankruptcy trusts. *See* JCI Post-Trial Motion at 5-6 ¶ 6; Brand Post-Trial Motion ¶ 16. Neither suggested in their motions that any settling trusts (other than Manville) should have been submitted to the jury for purposes of determining their liability on an equal footing with the remaining defendants and Manville.

In rejecting these arguments, the trial court did not specifically distinguish Manville from the other bankruptcy trusts at issue. It simply explained:

> The court denied this motion at a pre-trial hearing on the grounds that these entities had already filed for bankruptcy prior to the institution of suit on behalf of the plaintiff. Under these circumstances, it would have been unfair to include the bankrupts on the verdict sheet. *See Ottavio v. Fibreboard Corp.*, 617 A.2d 1296 (Pa. Super. 1992) (*en banc*), and *Ball v. Johns-Manville Corp.*, 625 A.2d 650 (Pa. Super. 1993).
>
> Closely related to this issue is the request by the defendants in their post-verdict motions for a set-off for any financial compensation [the Roveranos] may receive from multiple bankruptcy trusts. At this time the [c]ourt was uncertain what, if any, payments [the Roveranos] has [*sic*] received from

> any of these trusts and the court is unsure what claims were made or will be made in the future. Consequently it would be impossible for the court to calculate any set-off, even assuming the plaintiff has made such application.

T.C.O. at 11 (citations and capitalization modified).[6]

The Superior Court, for its part, analyzed the relevant questions more comprehensively. That court ruled that the jury should have been "permitted to consider evidence of any settlements by the Roveranos with bankrupt entities in connection with the apportionment of liability" under Subsection 7102(a.2). *Roverano v. John Crane, Inc.*, 177 A.3d 892, 909 (Pa. Super. 2017). The Superior Court noted that Subsection 7102(a.2) makes no explicit exception for "settling persons who are bankrupt." *Id.* at 910. The court then rejected the trial court's reliance upon the Superior Court's pre-amendment decisions in *Ottavio* and *Ball*, noting that Subsection 7102(a.2) expressly provides that evidence submitted in furtherance of allocating liability among settling non-parties is inadmissible in any other proceeding. Moreover, because the amended FSA obviates the need for jointly liable defendants to seek contribution, adding settling bankruptcy trusts to the verdict sheet creates no apparent risk of the contribution actions that informed the Superior Court's rulings in *Ottavio* and *Ball*. Accordingly, the Superior

---

[6] In so describing the state of the record, the court either overlooked or disregarded an exhibit the Roveranos had appended to their response to JCI's and Brand's post-trial motions, which identified seven trusts, including Manville, with which they had reached terms and the amount of money they had received from each. *See* Plaintiffs' Brief in Opposition to John Crane's Motion for Post-Trial Relief, Exh. K. Arguably, the Roveranos should be held to these admissions here. *See generally Dale Mfg. Co. v. Bressi*, 421 A.2d 653, 655 (Pa. 1980) (holding that admissions made in a given proceeding are binding within that proceeding). Consequently, when the Roveranos indicated by attachment to their post-trial motion that they had settled with seven bankruptcy trusts and provided the amounts received in connection with each, they appeared to confirm the existence of the settlements and the settlements' values arguably were established. Whether this is the case, however, is for the trial court to determine in the proceedings to follow our remand.

Court correctly reversed the trial court's ruling and remanded for a new trial on apportionment that took into account the settling bankruptcy trusts.

The Majority provides a useful review of the role bankruptcy trusts serve in resolving the long tail of belatedly manifesting asbestos-related disease, a mechanism that traces its origins to *In re Johns-Manville Corp.*, 36 B.R. 743 (Bankr. S.D.N.Y. 1984), and later was codified in the Bankruptcy Code, itself. *See* Maj. Op. at 34-35. As the Majority explains:

> The United States Congress enacted Bankruptcy Code Section 524(g), 11 U.S.C. § 524(g), "which statutorily validates the trust and channeling injunction mechanisms pioneered in the *Manville* case." [Elihu Inselbuch, et al., *The Effrontery of the Asbestos Trust Transparency Legislation Efforts*, MEALEY'S LITIGATION REPORT: ASBESTOS, vol. 28, #2, Feb. 20, 2013, at 4.] Under this statutory scheme, a bankruptcy court's confirmation of a Chapter 11 asbestos debtor's reorganization plan creates a trust for the payment of the debtor's present and future liability and an injunction that channels post-confirmation claims to the trust. *Id.* This enables the Chapter 11 debtor to reorganize and remain commercially viable while the trust administers asbestos personal injury claims. *Id.* at 4-5. A "trust distribution procedures" (TDP) document, which the bankruptcy court has approved, controls the administration of the trust. *Id.* at 5. "The trust has fixed assets that will be insufficient to pay the full historic settlement value of all claims; it therefore sets a payment percentage, and each present and future claimant is paid the liquidated value of his or her claim discounted by the payment percentage." *Id.*

Maj. Op. at 35 (footnote omitted).

The Majority next explains that Subsection 7102(a.2) allows apportionment to either of two settling entities: defendants, or any non-party that "has entered into a release with the plaintiff with respect to the action." *See id.* at 36 (quoting 42 Pa.C.S. § 7102(a.2)). This case involves examples of each, the Majority observes, because JCI filed a joining complaint that made Manville a party to these proceedings, and the Roveranos settled their claims with Manville before the case went to verdict. *Id.* The Roveranos separately

settled their claims with at least six other non-party bankruptcy trusts that were not named defendants.  *See supra* n.6.

Subsection 524(g)(1)(B) confers discretion upon the Bankruptcy Court to fashion a case-appropriate TDP and to enter related orders pertaining to the administration of a bankruptcy trust.  It also precludes a "legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust . . ., except such legal actions as are expressly allowed by the injunction, the confirmation order, or the plan of reorganization."  11 U.S.C. § 524(g)(1)(B).  But no such claim is in the offing in this case or others like it.

The statute says nothing that disallows including a settling bankruptcy trust on a verdict sheet strictly for purposes of determining its liability in furtherance of apportionment affecting the exposure of other non-bankrupt defendants, where doing so would not constitute an action "for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that . . . is to be paid . . . by a trust."  *Id.*  To the contrary, the allocation scenario at issue arises only when the trust in question has *already remitted payment and been released from further liability*.

The FSA provides that, strictly for purposes of apportioning liability, *any person* who has entered into a release with the plaintiff "*shall* be transmitted to the trier of fact upon appropriate requests and proofs by any party."  42 Pa.C.S. § 7102(a.2) (emphasis added).  Not only is this language intentionally inclusive, the legislative intention it reveals is reinforced by the lone exclusion it allows for employers who have immunity under the

Workers' Compensation Act. *Id.* This Court has held that the inclusion in a statute of an express exception implies the exclusion of others. *See Castellani v. Scranton Times, L.P.*, 956 A.2d 937, 951 (Pa. 2008) ("The Shield Law provides for one exception, . . . and we are not at liberty to create others that the Legislature, in its wisdom, chose not to include in the text of the statute."). Thus, if settling bankruptcy trusts are to be excluded from the verdict sheet as a matter of law, the source of the exclusion must lie elsewhere. But the only exclusionary sources the trial court and the Roveranos consider in this regard have no such effect.

*Ottavio* and *Ball* hinged upon the risk of impermissibly exposing bankrupt parties to contribution actions consequent to an allocation of liability to a party undergoing bankruptcy proceedings. But the FSA obviates the need for such actions in asbestos cases, and further provides that jury determinations pertaining to allocation *may not be used in any other proceeding*. As the Majority also notes, *Ottavio* and *Ball* are inapposite because the parties in this case are not parties whose bankruptcies are pending in the Bankruptcy Court and subject to the automatic bankruptcy stay. Rather, the original entities have been discharged from bankruptcy and the trusts created in connection with that proceeding are governed by their own rules. *See* Maj. Op. at 37 n.25.[7]

---

[7] This hints at a potential concern for another day. While language employed by the parties and the courts throughout these proceedings has suggested that the relevant question pertains to bankrupt entities and bankruptcy trusts alike, I have focused solely upon established bankruptcy trusts because it is such trusts only that are at issue. Whether the FSA requires (and whether it can require) the inclusion of parties subject to pending bankruptcy proceedings is a discrete question that is not presented here. Admittedly, the wording of our statement of the question presented suggests otherwise in its reference to settlements "with bankrupt entities," but the facts of this case do not appear to involve any party in that status. Moreover, the language is confusing because the bankruptcy trusts, as such, are not *bankrupt*.

Moreover, nothing in Bankruptcy Code § 524(g)(1)(B) necessitates excluding bankruptcy trusts from a verdict sheet for purposes of apportionment. Even where that section applies, exclusion is necessary only when the action in question seeks some form of collection from the trust in question. The parties, having settled their claims with the trusts at issue, have no further claims to litigate. Absent a far clearer federal directive, and without any evidence that applying the FSA to settling bankruptcy trusts interferes with the administration of the Bankruptcy Code, to find that Subsection 524(g)(1)(B) displaces the FSA conflicts with the principle that, "in discerning whether Congress intended to preempt state law, there is a presumption *against* preemption." *Dooner v. DiDonato*, 971 A.2d 1187, 1194 (Pa. 2009) (emphasis in original).

I agree with the Majority that FSA § 7102(a.2) requires "appropriate requests and proofs" of liability before a settling bankruptcy trust may be submitted to a jury for purposes of apportionment, and only upon such submissions may a jury be allowed to

---

Relatedly, the Majority opines that, as a function of the channeling injunctions, releases may be sought from, and liability for purposes of apportionment attributed to, bankruptcy trusts rather than the original parties. *Cf.* Maj. Op. at 37 n.25. This view is rooted in part on the basis that the original tortfeasors did "not 'enter[] into a release' with the Roveranos and consequently cannot be apportioned liability because they do not meet the conditions of Section 7102(a.2)." *Id.* I am not entirely persuaded of this latter premise. The Roveranos appended one of the releases to its brief in this Court as Appendix H. The release appears on the letterhead of "Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust." While characterizing the Roveranos' claims as directed to the trust, the release nonetheless applies, by its terms, to relieve of future claims not only the trust, but also "the Debtors, the Debtor's Estates and the Reorganized Debtors," *et al.*, Debtor having been defined elsewhere in the release as Armstrong World Industries, Inc., itself. This may be *pro forma* and have little bearing upon the Majority's observation, depending on how the TDPs may inform the matter, but it counsels vigilance in predicating any legal conclusions on the assumption that the original tortfeasors, having exited bankruptcy, may have no part whatsoever in any strict liability proceedings, related to apportionment or otherwise—subject, of course, to any preempting federal statutory law or controlling federal court orders.

determine whether a settling party was liable for the plaintiff's harm. But we granted review to consider whether, not under what precise circumstances, settling bankruptcy trusts may be included on a verdict sheet for purposes of apportionment.[8] Because the trial court precluded the submission of such proofs before trial commenced, it never had cause to assess the adequacy of any proofs JCI and Brand might have secured through discovery and submitted into evidence.

In short, settling bankruptcy trusts may be included on a verdict sheet for purposes of apportionment, provided that the party seeking to do so supplies the court with proof of settlement and, separately, evidence of liability sufficient to establish a basis upon which a jury may conclude that such liability should attach. Should the jury reach that conclusion, the trust must be counted in dividing the verdict *per capita*. This conclusion flows inexorably from the prevailing statutory language chosen by the General Assembly. Any contrary ruling necessarily would flow from principles and procedures that the legislature discarded when it enacted the 2011 amendments to the FSA.

---

[8] Relative to this issue, this Court granted review on the following question:

Whether, under this issue of first impression, the Superior Court misinterpreted the Fair Share Act in holding that the Act requires the jury to consider evidence of any settlements by the plaintiffs with bankrupt entities in connection with the apportionment of liability amongst joint tortfeasors?

*Roverano v. John Crane, Inc.*, 190 A.3d 591 (Pa. 2018) (*per curiam*).